[No. 45225-8-I. Division One. June 9, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. CLARENCE JONES, JR., *Appellant*.

*David B. Koch* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *James M. Whisman, Deputy*, for respondent.

KENNEDY, J. — In June 1999, Clarence Jones, Jr., was convicted by jury trial of unlawful possession of a firearm in the first degree in violation of RCW 9.41.040(1)(a). While Jones' appeal was pending, the Washington Supreme Court decided in *State v. Anderson*, 141 Wn.2d 357, 5 P.3d 1247 (2000) that the legislature intended to prohibit only "knowing" possession by a felon of a firearm; hence, knowledge is an essential element of the crime that the State must prove beyond a reasonable doubt. Because Jones' jury was not instructed that knowledge is an element of the crime, Jones argues that the State was relieved of its burden of proving every essential element of the crime and that he is entitled to a new trial. The error in the trial court's to-convict instruction is uncontested, but the State argues that it was harmless beyond a reasonable doubt. We stayed Jones' appeal pending our state Supreme Court's decision whether to adopt the reasoning of the United States Supreme Court in *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), which held that an erroneous jury instruction that omits or misstates an element of a charged crime is subject to harmless error analysis. In *State v. Brown*, 147 Wn.2d 330, 58 P.3d 889 (2002), our Supreme Court did adopt the reasoning in *Neder*. *See also State v. Borrero*, 147 Wn.2d 353, 58 P.3d 245 (2002). The test to be applied by the reviewing court is " '[w]hether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " *Brown*, 147 Wn.2d at 341 (quoting *Neder*, 527 U.S. at 15 (quoting, in

turn, *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). Applying this test, we conclude beyond a reasonable doubt that the jury verdict in Jones' case would have been the same without the instructional error.

Jones also contends that his constitutional right of confrontation was violated when the trial court excluded impeachment evidence that the State's key witness had been convicted of forgery 20 years before the trial in Jones' case. Because the 20-year-old forgery conviction had little if any relevance to the current credibility of the witness, and because the witness' testimony was substantially corroborated by a real-time videotape portraying the events of the evening in question in any event, Jones' right of confrontation was not violated by the trial court's evidentiary ruling.

We affirm the judgment and sentence in this case.

## FACTS

On March 27, 1998, Steven Spragg was on duty as a security guard at a restaurant and bar in Seattle. Spragg testified at trial that he saw Jones rush into the bar from outside, knocking over a candy machine that was near the entrance as he ran, and then run into the men's restroom. Spragg picked up and replaced the candy machine and followed Jones into the men's restroom. Jones was just walking out as Spragg walked in. Spragg noticed some paper towels on the floor near the wastebasket by the sink. He picked up the paper towels in order to put them into the wastebasket. Before he dropped the towels into the wastebasket, he noticed a metal object partially covered by towels that were already in the wastebasket. Upon moving those towels aside, Spragg saw that the metal object was a handgun. He picked the gun up by its barrel and put it into the pocket of his coveralls. Leaving the men's restroom, Spragg walked some 15 feet to the manager's office with the gun in his pocket. He showed the gun to the manager and placed it under a pillow on a cot in the manager's office.

While the manager was dialing 911 to report the gun to police, Spragg returned to his post, locking the manager's door behind him. Spragg looked for Jones and saw Jones wandering in and out of the bar and then going back into the men's restroom.

Spragg testified that when Jones came out of the restroom this second time, he seemed upset and asked Spragg for his "piece." Spragg replied that he did not know what Jones was talking about. Spragg testified that he certainly did know what Jones was talking about, but that he had no intention of returning the handgun to Jones. The bar was clearly posted in several prominent areas with signs prohibiting firearms on the premises. Jones then began telling several of his acquaintances about his missing "piece" and came back to ask Spragg about it at least twice more. Jones went to the door to the manager's office two different times and pounded on the door, demanding the return of his gun. At one point, Jones stated that if he didn't get his "piece" back he was going to tear the bar apart looking for it. During this time, several of Jones' acquaintances tried to persuade Spragg to give Jones his gun back.

The police arrived. Spragg identified Jones to them. They arrested Jones and took the gun into evidence. The bar was equipped with a real-time videotaping system that covered the lobby and bar areas, including the front door, the candy machine, the door leading into the men's restroom, and the door leading into the manager's office. Police retrieved the videotape and took it into evidence as well.

The videotape, which was played for the jury, showed Jones running into the bar, knocking over the candy machine, and entering the men's restroom. The tape showed Spragg righting the candy machine and entering the men's restroom as Jones came out. It showed Spragg leaving the men's room and entering the manager's office. It also showed that Jones approached and spoke to Spragg several times, and that Jones twice pounded on the door of the manager's office. It showed Spragg talking to several people whom Spragg identified as Jones' friends telling him to

return Jones' gun to him. Although the tape is silent, it shows that Jones was behaving as if he were upset.

The videotape contradicted some of Spragg's testimony. Although Spragg told police, and testified at trial, that he had inspected the men's restroom approximately 10 minutes before Jones first ran into the premises, and that nobody else had gone into the men's restroom in the interim, the videotape showed that approximately 20 minutes elapsed between these events, and that several men entered and left the men's restroom after Spragg's last inspection and before Jones ran into the building and entered the restroom. Additionally, Spragg told the police that Jones was wearing a stocking cap that evening; however Jones was not wearing one in the videotape.

Only one partial palm print was found on the gun, and it did not match Jones' palm print. The State's forensics expert testified that a cloth-lined pocket such as Spragg's would most likely obliterate fingerprints that might have previously been on the surface of the gun. Police officer witnesses testified as to the chain of custody of the gun and videotape. One officer testified that he test-fired the gun and that it was in working order, that the gun was very expensive, and that the gun had been reported as stolen. Another officer testified that the area was the subject of an emphasis patrol that evening, so that teams of police officers on bicycles were highly visible in the vicinity of the bar.

Jones did not testify or present any evidence. He stipulated that the trial judge would advise the jury that Jones had previously been convicted of an unidentified "serious offense." Jones' theory at trial was that any one of the several men who entered the restroom during the 20-minute interval between Spragg's last inspection of the restroom and Jones' first entry into the restroom could have put the gun into the wastebasket and, therefore, there was a reasonable doubt about whether Jones was the one who actually put the gun there. The State responded during rebuttal argument that none of these other men demanded

that Spragg return his "piece," or pounded on the manager's office door demanding the return of his gun, or threatened to tear the place apart unless the gun were returned to him.

Before trial, it was revealed that Spragg had a 20-year-old conviction for forgery. Jones sought to use the conviction as impeachment evidence. The trial court rejected the evidence. Jones did not raise his constitutional right to confrontation at the trial; rather, he urged the court to exercise its discretion under ER 609(b) to admit the evidence, despite the length of time since the conviction, because Spragg was the State's key witness.

The trial was held approximately nine months before our Supreme Court decided in *State v. Anderson, supra,* that "knowing" possession is an essential element of the felony crime of unlawful possession of a firearm. Accordingly, this element was omitted from the to-convict instruction in Jones' case.

The jury found Jones guilty as charged, and he was sentenced within the standard range. This timely appeal followed.

## DISCUSSION

### Erroneous To-Convict Instruction

Jones contends that his right to due process was violated when the trial court gave jury instruction 6, the to-convict instruction for first degree unlawful possession of a firearm, because the instruction omitted an essential element of the offense, specifically, that the State must prove that Jones knowingly possessed the firearm.[1]

---

[1] The instruction to the jury read:

To convict the defendant Clarence Jones, Jr. of the crime of unlawful possession of a firearm in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 27th day of March, 1998, Jones owned or had a firearm in his possession or under his control, to wit: a handgun;

(2) That the defendant had previously been convicted of a serious offense; and

██ Due process requires that an instruction "purporting to list all of the elements of a crime must in fact do so." *State v. Smith*, 131 Wn.2d 258, 262-63, 930 P.2d 917 (1997) (citing *State v. Emmanuel*, 42 Wn.2d 799, 819-20, 259 P.2d 845 (1953)). A to-convict instruction that fails to set forth every essential element of the charged crime is error of constitutional magnitude that may be raised for the first time on appeal. *State v. Aumick*, 126 Wn.2d 422, 429-30, 894 P.2d 1325 (1995); *State v. Scott*, 110 Wn.2d 682, 689-90, 757 P.2d 492 (1988).

Jones relies in part upon this court's opinion in *State v. Jones*, 106 Wn. App. 40, 21 P.3d 1172 (2001), which was decided before our state Supreme Court decided *State v. Brown, supra*, that an erroneous jury instruction that omits or misstates an element of a charged crime is subject to harmless error analysis. In *Jones*, we said that notwithstanding the United States Supreme Court's decision in *Neder*, Washington law is unclear whether harmless error analysis applies in this setting. *Jones*, 106 Wn. App. at 43 (citing a line of Washington cases that held that harmless error analysis does not apply when instructional errors relieve the State of its burden of proof). The *Jones* court found it unnecessary to the resolution of that case to determine whether our state Supreme Court would follow *Neder*:

> We need not resolve this issue. Even assuming *Neder* is controlling, we cannot say that the omission of the knowledge element was harmless beyond a reasonable doubt. The State correctly points out that knowledge was not disputed in Jones' trial. But there is an obvious explanation for this; knowledge was not declared an element of the offense until *after* Jones' trial. The State also suggested at oral argument that knowledge could not have been disputed on these facts. Under the circumstances of this case, it would be an untoward act of speculation for this court to declare what the defense could or could not have done had it known of the element. Jones did not

---

(3) That the acts occurred in the State of Washington.
Clerk's Papers at 19.

testify at trial, and we simply have no way of knowing what evidence the defense could have presented, or what strategies it might have employed, had it been aware of the element before trial. Accordingly, we cannot find the error harmless beyond a reasonable doubt.

*Jones*, 106 Wn. App. at 44-45 (footnote omitted). Jones urges that we, likewise, decline to speculate as to what the defense strategy may have been, if he had been aware of the knowledge element before trial. Like the defendant in *Jones*, Jones did not testify at his trial.

But *Jones* was decided on its own facts. Having the benefit of our Supreme Court's opinion in *Brown*, our task was to decide on the facts of *this* case whether or not the instructional error was harmless beyond a reasonable doubt.

 Our Supreme Court has said that while an instruction that relieves the State of its burden to prove every element of a crime requires automatic reversal, not every omission or misstatement in a jury instruction relieves the State of its burden. *Brown*, 147 Wn.2d at 339. The test, as outlined in *Neder* and *Brown* is this: " '[W]hether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " *Brown*, 147 Wn.2d at 341 (quoting *Neder*, 527 U.S. at 15 (quoting, in turn, *Chapman*, 386 U.S. at 24)). Our court also said: "When applied to an element omitted from, or misstated in, a jury instruction, the error is harmless if that element is supported by uncontroverted evidence. *Neder*, 527 U.S. at 18."

The facts in *Neder* and the United States Supreme Court's analysis in that case are instructive. There, the defendant was charged with, among other kinds of fraud, tax fraud for failing to report $5 million of income on his tax returns. *Neder*, 527 U.S. at 15. In accordance with then extant but subsequently overruled precedent in the Eleventh Circuit, the trial court instructed the jury that in order to convict on the tax offenses it " 'need not consider' " the materiality of any false statements " 'even though that

language is used in the indictment.' " *Id.* at 6 (quoting the trial court's instruction). The court also instructed that the question of materiality " 'is not a question for the jury to decide.' " *Id.* The subsequently overruled precedent held that materiality was a question of law for the court to decide, rather than a question of fact for the jury to decide. By the time the case reached the Eleventh Circuit, the previous precedent had been overturned. Thus, the Eleventh Circuit found the instruction to be error, but also found the error to be harmless because " 'materiality was not in dispute' " and thus the error " 'did not contribute to the verdict obtained.' " *Id.* at 7 (quoting *United States v. Neder*, 136 F.3d 1459, 1465 (11th Cir. 1998) and *Yates v. Evatt*, 500 U.S. 391, 403, 111 S. Ct. 1884, 114 L. Ed. 2d 432 (1991)). In affirming, the United States Supreme Court said this:

> [W]e are entitled to stand back and see what would be accomplished by [reversal] in this case. The omitted element was materiality. Petitioner underreported $5 million on his tax returns, and did not contest the element of materiality at trial. Petitioner does not suggest that he would introduce any evidence bearing upon the issue of materiality if so allowed. Reversal without any consideration of the effect of the error upon the verdict would send the case back for retrial—a retrial not focused at all on the issue of materiality, but on contested issues on which the jury was properly instructed. We do not think the Sixth Amendment requires us to veer away from settled [federal] precedent to reach such a result.

*Neder*, 527 U.S. at 15.

■ ■ Here, the omitted element was knowledge. The jury could not have convicted Jones in this case unless it found beyond a reasonable doubt that Jones is the person who put the gun into the wastebasket in the men's restroom, for, unless Jones is the person who put the gun into the wastebasket, he never possessed it at all. Whoever put the gun into the wastebasket could not have done so without knowledge that it was in fact a gun that he was placing into the wastebasket. That person could not have unwittingly possessed the gun that he carried into the

men's restroom and placed into the wastebasket. Jones does not suggest that he would introduce any evidence bearing upon the element of knowledge if so allowed. Nor could he. His best defense was the one he used at trial—the videotape showed that several other men went into the restroom between the time of Spragg's last inspection and Jones' entry into the restroom, and any one of them could have put the gun into the wastebasket. If a new trial were held, Jones would still have to cope with Spragg's testimony and the evidence on the videotape—showing that only Jones, and not any of those other men, returned to the men's restroom within minutes, came back out, spoke to Spragg in an agitated manner, and pounded on the manager's office door, all the while demanding the return of his "piece." This is damning and uncontroverted evidence of knowledge. We conclude beyond a reasonable doubt that the erroneous omission of the element of knowledge from the to-convict jury instruction had no effect on the verdict in Jones' trial.

Right to Confront Witnesses

Jones contends that the trial court violated his Sixth Amendment right to confrontation by rejecting his request to impeach the State's key witness, Spragg, with Spragg's 20-year-old conviction for forgery. Jones raises the potential constitutional ramifications of the trial court's ruling for the first time on appeal.

Under ER 609(a) and (b) evidence that a witness has been convicted of a crime involving dishonesty or false statement (such as forgery) is admissible for the purpose of attacking the credibility of the witness if a period of less than 10 years has elapsed since the date of the conviction (or since the witness's release from confinement, whichever is the later date). If more than 10 years has elapsed, however, the evidence is not admissible unless the court determines, in the interest of justice, that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. At trial, Jones agreed that the conviction occurred longer than 10 years ago, but said, "[H]owever, the court can allow it. It is a crime

of dishonesty." Jones did not suggest any specific facts and circumstances by which the court could determine that, in the interests of justice, the probative value of the conviction substantially outweighed its prejudicial effect. The trial court ruled: "At this point, I would intend to exercise the discretion vested in the court in Evidence Rule 609 to exclude the mention of a 20-year-old prior conviction." Report of Proceedings at 5-6. The issue did not arise again.

■ ■ Insofar as here applicable, RAP 2.5(a) permits a party to raise a claim of error for the first time in the appellate court only for "manifest error affecting a constitutional right." This does not mean that appellate courts will hear *all* claims of constitutional error raised for the first time on appeal. *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992). *Lynn* established a four-step analysis for considering such claims. First, the court determines whether the alleged error suggests a constitutional issue. *Id.* Here, the alleged error does "suggest" a constitutional issue. Although the trial court's ruling was clearly well within the discretion granted to courts under ER 609(a) and (b), evidentiary rules must sometimes give way to a criminal defendant's right to confront the witnesses against him. *State v. McDaniel*, 83 Wn. App. 179, 188 n.5, 920 P.2d 1218 (1996). Second, the court must determine whether the alleged constitutional error is "manifest." *Lynn*, 67 Wn. App. at 345. Under *Lynn*, a "manifest" error is one that is "unmistakable, evident or indisputable, as distinct from obscure, hidden or concealed." *Id.* at 345. As our Supreme Court put it in *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988), the error must be truly of constitutional magnitude. Moreover, it is only a showing of actual prejudice that makes an alleged constitutional error "manifest." *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). An appellant who claims manifest constitutional error must show that the outcome likely would have been different, but for the error. *Id. See also Lynn*, 67 Wn. App. at 346 (RAP 2.5(a) requires the defendant to "make a showing how, in the context of the trial, the alleged error actually 'affected' the defendant's rights.").

■ Jones seeks to meet this burden by pointing out that Spragg was the State's key witness—without his testimony, the State had no case. Although the State agrees that Spragg was its key witness, this does not automatically answer the question of whether the alleged constitutional error is "manifest." In *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983), our Supreme Court set forth a two-pronged test for determining whether the failure to admit impeachment evidence against a State's witness violates the defendant's right to confrontation. First, the evidence must be relevant. Second, if the evidence is relevant, the court looks to see whether the State has shown a compelling interest that outweighs the interest of the defendant in admitting the evidence.

■ Under ER 609(a) and (b), a conviction for a crime of dishonesty that occurred more than 10 years ago is presumed to be inadmissible for the purpose of attacking the credibility of a witness. Thus, the evidence is presumed to be irrelevant to credibility, absent specific facts or circumstances from which the trial court can determine, in the interest of justice, that the conviction has probative value that outweighs its prejudicial effect. Reason dictates that the older such a conviction becomes, the less probative value it likely will have. *Cf. McDaniel*, 83 Wn. App. at 186 (holding a *recent* lie under oath to be relevant to a witness's credibility). Here, the conviction was 20 years old—twice the number of years giving rise to the presumption of inadmissibility—and there is no indication in the record of any specific facts or circumstances by which the trial court could determine that the evidence was nevertheless relevant to Spragg's credibility as a witness at all, let alone that its probative value outweighed its prejudicial effect.

■ The Sixth Amendment does not entitle a defendant to present irrelevant evidence. *Hudlow*, 99 Wn.2d at 15. On this record, we conclude that the evidence of Spragg's

20-year-old conviction for forgery was irrelevant.[2] More-over, Jones had a much more effective means of impeaching Spragg than by the use of the 20-year-old conviction, if not strictly for credibility, then certainly for the accuracy of his recall. *See State v. Barnes*, 54 Wn. App. 536, 541, 774 P.2d 547 (1989) (a defendant's ability to use other relevant evidence to serve the purpose of impeachment is a factor that may justify limiting cross-examination). As previously indicated, although the videotape corroborated much of Spragg's testimony, the videotape also irrefutably showed that Spragg's testimony that only 10 minutes elapsed from the time of his last inspection of the men's restroom and Jones' entry into the restroom, and that no one else but Jones entered the restroom in that intervening time was simply incorrect. The videotape also showed, notwithstanding Spragg's statement to police, that Jones was not wearing a stocking cap that evening. This was made abundantly clear to the jury by defense counsel's tactical use of the real-time videotape, in the course of cross-examination of Spragg.

In the course of determining whether the alleged constitutional error was "manifest," we have concluded that there was no constitutional error. Thus, further analysis is unnecessary.

Affirmed.

COLEMAN and ELLINGTON, JJ., concur.

---

[2] This being so, we do not need to reach the second prong of the *Hudlow* test—whether the State has shown a compelling interest that outweighs the interest of the defendant in admitting the evidence.