FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 23

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42938-1-II |
| Respondent, | |
| v. | |
| JEFFERY RAY MONTGOMERY, | Consolidated with: |
| Appellant. | |
| STATE OF WASHINGTON, | No. 42958-6-II |
| Respondent, | |
| v. | |
| REX ALAN McNICOL, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — A jury found Pierce County Sheriff's Deputies Rex Alan McNicol and Jeffery Ray Montgomery guilty of first degree perjury. Rejecting the claims of Deputies McNicol and Montgomery on appeal, we hold that (1) the State presented sufficient evidence to prove they committed first degree perjury; (2) assuming trial court error, it was harmless error to exclude evidence of a witness's gross misdemeanor conviction; (3) the trial court did not deprive the defendants or the public of the right to an open and public trial by sealing juror questionnaires; and (4) Deputy McNicol's counsel was not ineffective. Accordingly, we affirm.

FACTS

In January 2009, dispatchers sent Deputies McNicol and Montgomery to Robert Barham's and Doris Resch's home to perform a welfare check on Resch's son, JA.[1] According to Deputy Montgomery's incident report, the deputies met Barham at his front door. They told Barham they were there to check on JA's welfare. Deputy Montgomery spoke with JA off of the front porch while Deputy McNicol spoke with Barham on the porch. Barham, who the deputies knew had a drug-related felony conviction, admitted that he had a rifle in his closet. Per Deputy Montgomery's report, Barham took Deputy McNicol into the house so that Deputy McNicol could retrieve the rifle. Then Deputy Montgomery entered the home, took the gun from Deputy McNicol, and secured it. Next, Deputy McNicol walked Barham outside where Deputy McNicol arrested him, and Deputy Montgomery went back in the house to speak with JA and Resch.

At a pretrial suppression hearing, however, the deputies characterized differently what occurred at Barham's home. Deputy McNicol testified that after he contacted Barham, Barham acknowledged that he owned a firearm, and the deputies waited outside while Barham entered the home alone to retrieve the firearm. Deputy Montgomery testified that neither he nor Deputy McNicol entered the home to seize the firearm. When questioned why his incident report differed from his testimony 14 months after the incident, Deputy Montgomery explained that his memory was more accurate at the hearing: "It was a lapse of memory on mine. Thinking back on it now, I remember. But at the time I wrote it, a mistake on my part." Clerk's Papers at 68-69.

---

[1] We use the minor's initials to protect his privacy.

2

Because of these conflicting accounts, the prosecutor referred the matter to the Pierce County Sheriff's Department. Following an internal investigation, the State charged both deputies with one count of first degree perjury, and the deputies were tried in a single proceeding.

Before trial, the parties asked prospective jurors to complete a questionnaire that was then used in oral voir dire. Following jury selection, the trial court sealed the questionnaires without objection.

Because the State intended to call Barham to testify to the events at his house, Deputies McNicol and Montgomery sought to admit evidence of Barham's criminal history to undermine his credibility. While the State agreed that Barham's 2003 felony drug conviction was admissible under ER 609(a), it argued that Barham's March 2001 gross misdemeanor conviction for attempted second degree possession of stolen property should not be admitted because it was over 10 years old; and, it would be unfairly prejudicial because many venire members indicated that, at some point, they had filed police reports as property crime victims. The trial court excluded evidence of Barham's attempted second degree possession of stolen property conviction because the conviction was older than 10 years, and it had ruled that the defense could use Barham's drug conviction to attack his credibility.

At trial, Barham testified to the January 21, 2009 events. He explained that after the deputies arrived at his house, he, Deputy McNicol, and Resch walked to the bedroom to retrieve the firearm. Once Deputy McNicol obtained the gun, Deputy Montgomery entered the house to take the gun from Deputy McNicol and secure it.

3

Resch also testified that both deputies entered Barham's home. She recalled that once Barham admitted to having the firearm in the house, the deputies immediately arrested him. Then, one deputy entered the home and stood in the front room while the other went to the bedroom with Resch to locate the firearm.

Pierce County Detective Sergeant Ben Benson testified that it would be unacceptable for deputies to direct a convicted felon and suspected drug user to enter his home, unattended and outside of the deputies' view, to retrieve a firearm. During Detective Sergeant Benson's testimony, the State played a recording of Detective Sergeant Benson's interview of Deputy Montgomery, including this exchange:

> Q Well, I mean without thinking that, you knew that what you were testifying to wasn't accurate. Correct?
> A The bottom line, yeah, 'cause here I had the report, and that's, I wrote it, and that's what I recall happening.
> Q And you testified to something different?
> A Yes.

Ex. 15 p. 7.

Deputies McNicol and Montgomery testified that before the suppression hearing, they sat outside the courtroom and reviewed Deputy Montgomery's incident report. Deputy McNicol told Deputy Montgomery that they never entered the house and that they directed Barham to retrieve the gun and bring it out to them. Deputy Montgomery testified that he trusted Deputy McNicol's version of events more than his own memory and incident report. Deputy Montgomery added that at the suppression hearing, he remembered not entering the home, but now at trial, he could not remember whether they entered the home or not.

No. 42938-1-II/
No. 42958-6-II

Deputy Montgomery explained that when he saw Deputy McNicol with the firearm outside the home, he had assumed that Deputy McNicol had gone inside the home to retrieve it; but, he later believed that Deputy McNicol had not actually entered the home. Deputy Montgomery then testified that he had made at least four uncorrected mistakes in his incident report when he twice indicated that Deputy McNicol had been inside the home and when he twice indicated that he too had entered the home.

Throughout trial proceedings, both defendants argued motions, offered and argued evidence, participated in direct and cross-examination of witnesses, and raised objections. The jury found both defendants guilty as charged. The defendants appeal in a consolidated case.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Defendants first argue that the State failed to offer sufficient evidence to prove that they committed perjury. We disagree.

A. Standard of Review

Sufficient evidence supports a conviction if any rational trier of fact could find the crime's essential elements beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). An appellant claiming insufficient evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of

conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

## B. Analysis

A person is guilty of first degree perjury when "in any official proceeding he or she makes a materially false statement which he or she knows to be false under an oath required or authorized by law." RCW 9A.72.020. In addition, the State must present:

> 1. The testimony of at least one credible witness which is positive and directly contradictory of the defendant's oath; and
> 2. Another such direct witness or independent evidence of corroborating circumstances of such a character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence.

*State v. Olson*, 92 Wn.2d 134, 136, 594 P.2d 1337 (1979).

The direct testimony required to support a perjury conviction "must come 'from someone in a position to know of his or her own experience that the facts sworn to by the defendant are false.'" *State v. Singh*, 167 Wn. App. 971, 976, 275 P.3d 1156 (2012) (quoting *Nessman v. Sumpter*, 27 Wn. App. 18, 24, 615 P.2d 522, *review denied sub nom. State v. Howie*, 94 Wn.2d 1021 (1980)). And the corroborating evidence "need not equal in weight the testimony of a second witness," but it "must be clear and positive and so strong that, with the evidence of the witness who testifies directly to the falsity of the defendant's testimony, it will convince the jury beyond a reasonable doubt." *State v. Rutledge*, 37 Wash. 523, 527, 79 P. 1123 (1905). The defendant's admissions and contradictory statements, even though not made under oath, are sufficient, given in corroboration of the single witness to satisfy the quantum of evidence required to support a perjury conviction. *State v. Buchanan*, 79 Wn.2d 740, 745, 489 P.2d 744 (1971).

6

As a threshold matter, the testimony regarding whether the deputies entered the home was material because this fact dictated the trial court's analysis of the legality of the deputies' search of Barham's home and seizure of the firearm. *See e.g., State v. Ferrier*, 136 Wn.2d 103, 118, 960 P.2d 927 (1998) (holding that under article 1, section 7 of Washington Constitution, where police knock and request permission to enter and search one's home without a warrant, they must advise the home dweller of her or his right to refuse the request or limit the search).

Next, sufficient evidence supported the perjury convictions. Either Barham's or Resch's testimony satisfied the first element, and either Barham's or Resch's testimony satisfied the second element; and the jury instructions were clear that the jury had to use different evidence for elements one and two. In addition, regarding Montgomery, his incident report also satisfied element two.

Barham testified that Deputy McNicol entered the home with him to retrieve the gun from the bedroom. Resch testified that she took one of the deputies to the bedroom to retrieve the firearm while the other deputy stood in the front room. Though the details of these two eyewitness accounts differ, the material facts are consistent—they both testified that the deputies entered the home to seize Barham's firearm.

Deputy Montgomery's incident report provides additional evidence to support Deputy Montgomery's conviction. It twice indicated that Deputy McNicol had entered the home with Barham to seize the gun and twice indicated that Deputy Montgomery had entered the home to obtain the gun from Deputy McNicol. The incident report closely paralleled Barham's testimony and directly contradicted the deputies' suppression hearing testimony in which they claimed to have never entered Barham's home. And moreover, the jury heard the audio interview in which

Deputy Montgomery admitted to testifying contrary to what he recalled actually happening at Barham's residence. Therefore, the jury heard additional evidence to conclude that Deputies McNicol and Montgomery committed perjury at the suppression hearing. *See Rutledge*, 37 Wash. at 527.

Because the State's direct and corroborating evidence all demonstrated the material issue—that the deputies entered Barham's home, contrary to their suppression hearing testimony—it satisfied both parts of the heightened sufficiency standard in perjury proceedings. Accordingly, the State presented sufficient evidence from which the jury could find that the defendants knowingly made false statements that were material to the earlier case's outcome.

## II. RIGHT TO CONFRONT AND CROSS-EXAMINE ACCUSER

Next, the defendants argue that the trial court violated their right to confront and cross-examine their accuser when it ruled that the defense could not admit evidence of Barham's 2001 conviction for attempted second degree possession of stolen property. Even assuming, without deciding, that it was error, any error was harmless.

### A. Standard of Review

We review a trial court's decision regarding the admissibility of prior conviction evidence under ER 609 for abuse of discretion. *State v. Rivers*, 129 Wn.2d 697, 704-05, 921 P.2d 495 (1996). A trial court abuses its discretion when its ruling is manifestly unreasonable or when it exercises discretion on untenable or unreasonable grounds. *State v. Bankston*, 99 Wn. App. 266, 268, 992 P.2d 1041 (2000).

Under ER 609(a) and (b), evidence that a witness has been convicted of a crime involving dishonesty is admissible to attack the witness's credibility if a period of less than 10 years has

8

elapsed since the conviction date. *State v. Jones*, 117 Wn. App. 221, 231, 70 P.3d 171 (2003). If more than 10 years has elapsed, however, under ER 609(b) the evidence is not admissible unless the court determines, in the interest of justice, that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.[2] *Jones*, 117 Wn. App. at 231. Any error regarding the admission or exclusion of prior conviction evidence is harmless, however, if within reasonable probabilities, the trial outcome would not have been materially different, had any error not occurred. *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012).

## B. Analysis

Here, on September 19, 2011, the defendants sought to admit evidence of Barham's March 2001 conviction for attempted second degree possession of stolen property. Because more than 10 years had elapsed since the conviction, the evidence was not automatically admissible under ER 609(b) and instead was only admissible if the trial court determined that the admission of the conviction was in the interest of justice and that the probative value substantially outweighed potential prejudice. *See Jones*, 117 Wn. App. at 231.

---

[2] Under ER 609(b):
> Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

9

The trial court determined that the defendants could not admit Barham's gross misdemeanor conviction because it was over 10 years old and because they were allowed to use a prior drug conviction to impeach Barham. Even assuming it was error to exclude evidence of the gross misdemeanor conviction, Deputies Montgomery and McNicol were allowed to impeach Barham's credibility with the prior felony drug conviction. It is difficult to see, in light of this impeachment evidence, how the trial outcome would have differed had the trial court admitted Barham's gross misdemeanor conviction. Thus, even had the trial court erred, any error would have been harmless.

### III. SEALED JURY QUESTIONNAIRES

Next, the defendants both argue that the trial court deprived their and the public's open and public trial right when it sealed the juror questionnaires without first performing a Bone-Club[3] analysis on the record. The trial court did not err in sealing the juror questionnaires.

When a trial court allows parties to use juror questionnaires as a screening tool during oral voir dire in open court, it need not perform a Bone-Club analysis before later sealing those questionnaires because the sealing does not constitute a courtroom closure implicating the public trial right. *State v. Beskurt*, 176 Wn.2d 441, 447-48, 293 P.3d 1159 (2013). Here, potential jurors completed questionnaires later used during oral voir dire on the record in open court. Following voir dire, the trial court sealed the questionnaires. Because sealing juror questionnaires used in oral voir dire does not constitute a courtroom closure implicating the

---

[3] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

public trial right, the trial court had no obligation to perform a *Bone-Club* analysis. Accordingly, the trial court did not err. *See Beskurt*, 176 Wn.2d at 447-48.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Deputy McNicol contends that defense counsel provided ineffective assistance because he submitted no pretrial motions of his own, no written responses to the State's motions, and no persuasive legal authority on critical issues now raised on appeal. Deputy McNicol does not demonstrate ineffective assistance.

### A. Standard of Review

To succeed on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's conduct was deficient, or fell below an objective reasonableness standard; and (2) the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel is presumed to have acted reasonably unless shown otherwise. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To show prejudice, the defendant must demonstrate reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If the ineffective assistance claim fails on one prong, we need not address the other. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). We evaluate counsel's competency based on the entire trial record. *State v. Townsend*, 142 Wn.2d 838, 843, 15 P.3d 145 (2001).

### B. Analysis

Deputy McNicol's portrayal of defense counsel as grossly underperforming is inaccurate. Defense counsel filed an omnibus application seeking additional materials beyond what had initially been supplied in discovery. He argued motions before the trial court and cross-

11

examined state witnesses. He also presented Deputy McNicol's testimony, as well as an opening statement and closing argument. Deputy McNicol asserts that defense counsel was ineffective because he joined his codefendant's written motions instead of filing separate ones. Because the State charged both defendants with the same crime stemming from the same conduct that arose from the same event, it was not unreasonable for defense counsel to make the strategic decision to decline to file his own pretrial motions which would have included nearly identical contents to those of Deputy Montgomery. Even assuming that it was objectively unreasonable, Deputy McNicol cannot demonstrate how filing separate motions—containing the same arguments and law that the trial court rejected in Deputy Montgomery's motions—would have resulted in a different outcome. Therefore, Deputy McNicol cannot prove resulting prejudice. Accordingly, he cannot demonstrate ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, A.C.J.

We concur:

_____
Penoyar, J.

_____
Bjorgen, J.

12