[No. 36088-4-I.    Division One.    August 19, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. SHAWN
KERRY MCDANIEL, *Appellant*.

*James E. Lobsenz* and *Carney, Badley, Smith & Spellman,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lee D. Yates, Deputy,* for respondent.

KENNEDY, A.C.J. — Shawn McDaniel appeals his convictions of one count of second degree assault of Erlasu Graham and one count of fourth degree assault of John Bothwell. With respect to the second degree assault conviction, McDaniel contends that the trial court violated his constitutional right to confrontation by limiting the scope of cross examination to exclude evidence that Erlasu Graham had recently admitting lying under oath in a related civil proceeding about the recency of her drug use, and to exclude evidence that Erlasu had a motive to lie in the criminal proceeding about her drug use on the day of the assault because she was on probation after having been convicted of possession of cocaine, and because one of the conditions of her probation was that she not use illegal drugs. We agree with these contentions and accordingly reverse McDaniel's conviction of second degree as-

sault, and remand for a new trial on that count. McDaniel's conviction of fourth degree assault is affirmed.[1]

## FACTS

In the spring of 1990, Erlasu Graham and John Bothwell shared an apartment in a building owned by Gene McDaniel, the appellant's father. On March 19 or 20, 1990, Gene had an eviction notice served on Graham and Bothwell. On March 21, 1990, Bothwell went to Gene's office to discuss the eviction notice. An argument over the eviction ensued. A physical altercation broke out. Bothwell testified that he was attacked by appellant McDaniel and by another man, Ron Fox.

Erlasu Graham testified that when she arrived home from work at about 5 p.m. on March 21, 1990, appellant McDaniel, Ron Fox, and Robert Jobes blocked her entry into the apartments and harassed her. When she was able to get by them, Graham proceeded up to her apartment, changed her clothes, and then left again to view a nearby apartment. Returning a few minutes later, Graham heard sounds of violence coming from Gene McDaniel's office. When she tried to enter the office to check on Bothwell, appellant McDaniel and Fox blocked her entry. Graham then tried to call 911 on the lobby telephone, but before she could complete the call, Jobes disconnected the phone.

Graham testified that Jobes struck her from behind and that she fell to the ground. Graham testified that appellant McDaniel then kicked her several times in the face, ribs, and back. Graham testified that she heard appellant McDaniel say, "You didn't think we'd do it." Vol. 4, Report of Proceedings at 16. Graham was later hospitalized and treated for a fractured lower jaw and a nasal fracture.

McDaniel and co-defendant Jobes were charged with second degree assault of Graham. By the same Information, McDaniel and co-defendant Fox were charged with

---

[1]McDaniel's remaining challenges are treated in the unpublished portion of this opinion.

fourth degree assault of Bothwell. McDaniel's jury trial commenced on January 24, 1991. Prior to the taking of testimony, the State brought a motion in limine to suppress all reference to prior bad acts of the victims, including instances of past drug usage. The State argued that suppression was proper because there was no reliable evidence that either victim was affected by drugs on March 21, 1990. The trial court granted the State's motion suppressing evidence of past drug usage by the victims, but held that it would permit testimony regarding witnesses' observations of the physical appearance of Bothwell and Graham on the day in question.

The State brought a second motion in limine seeking to suppress evidence of past convictions of McDaniel and both victims under ER 609.[2] Counsel for McDaniel agreed to a stipulation that none of the past convictions were admissible, and the trial court accepted the stipulation, ruling that none of the convictions shed any light on credibility of the witnesses.

McDaniel presented different defenses to the two assault charges. With respect to the charge of fourth degree assault, McDaniel maintained that he acted in self defense when Bothwell initiated a fight while in a drug-induced rage. With respect to the charge of second degree assault, McDaniel maintained that he never had any contact with Graham, and that co-defendant Jobes was responsible for her injuries.

During Graham's testimony, counsel for defendant Fox requested clarification regarding whether the defendants could impeach Graham by raising her admission that she had lied about the recency of her drug use during her deposition in a related civil suit.[3] McDaniel joined in Fox's request. The court refused to allow the defendants to

---

[2]McDaniel had a conviction of felony eluding, Bothwell had a conviction of third degree assault, and Graham had a conviction of possession of cocaine.

[3]Fox's counsel stated: "Your Honor, I would like clarification before Miss Graham is back on the stand. I had intended to cross-examine Mrs. Graham with regard to her failing to mention in her deposition that she had used drugs

impeach Graham with her admission that she had lied under oath, stating: "[I]t is inappropriate unless it is shown that she was under the influence at the time of the alleged incident." Vol. 3 Report of Proceedings at 67.

On the fifth day of trial, the trial court reversed its earlier ruling suppressing evidence of prior drug usage by Graham and Bothwell. The trial court permitted the defense to present the testimony of David Musick, who testified to having frequently used drugs with Graham and Bothwell through late February or early March of 1990. Musick testified, though, that he had no knowledge of what happened on March 21, 1990.

The defense also presented the testimony of Dr. Lawrence Halpern, a professor of pharmacology at the University of Washington. Based on the testimony that on the day of the alleged assault Bothwell exhibited agitation, anxiety, mood swings, inability to carry on a conversation, enlarged pupils, feelings of persecution, and a high strung voice, Dr. Halpern concluded:

> The use of cocaine one time might produce some of those effects, but paranoia would not be from the use of cocaine one time. The paranoia more than likely would be present after repeated use of cocaine, leading to misperceptions of reality, with paranoia breaking out at the end. As I said earlier, it is part of this stage toxicity with cocaine, so this does not tell us that these people had used drugs that day, and the drug was responsible for these signs. What it suggests to me is the drug had been used for some period of time and these effects are indistinguishable from drug use that day or withdrawal from the drugs that had been used previously, many days previously.

Vol. 10 Report of Proceedings at 9.

---

after 1988. In fact, she, in a blanket statement in her deposition, she is asked so you haven't used any drugs since 1988? And she says right. And then in our interview in [the prosecutor's] office, she indicated to us that indeed she had used drugs subsequent to 1988. And I'm not offering this to disparage her with her drug use. In fact, I intend to ask my client whether or not he has smoked marijuana with Miss Graham before or after 1988. I only do it to offer it to show that she has in the past not told the truth. I think it is appropriate for cross-examination." Vol. 3 Report of Proceedings at 64.

During closing argument, McDaniel's attorney argued that the evidence of drug usage by Graham and Bothwell was highly relevant because drug intoxication would affect their ability to accurately perceive the events of March 21, 1990. Counsel stated: "I am asking you to acquit my client on several grounds, including the lack of reliability of the testimony of Mr. Bothwell and Miss Graham, because of the possible explanation that they were high on drugs." Vol. 14 Report of Proceedings at 66.

Following deliberations, the jury found McDaniel guilty of both counts of assault. McDaniel moved for a new trial, and on April 4, 1991, the trial court granted the motion. The State appealed the grant of a new trial, and McDaniel cross-appealed. On March 7, 1994, this court reversed the grant of a new trial by unpublished decision on grounds unrelated to the present appeal. On January 27, 1995, the trial court entered judgment on McDaniel's convictions, and sentenced him within the standard range. This timely appeal followed.

## DISCUSSION

McDaniel contends that the trial court violated his constitutional right to confrontation by limiting the scope of cross examination to exclude evidence that Graham admitted having lied under oath in a related civil proceeding regarding the recency of her drug use, and by prohibiting cross examination as to the terms of Graham's 1988 probation for possession of cocaine and her consequent motive to lie about her drug use on the day in question.

■ Under ER 611(b), the trial court has discretion to determine the scope of cross examination.[4] An appellate court will not reverse a trial court's rulings on the scope of cross examination absent a manifest abuse of discre-

[4]ER 611(b) provides: "Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

tion. *State v. Campbell*, 103 Wn.2d 1, 20, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985); *State v. Dickenson*, 48 Wn. App. 457, 466, 740 P.2d 312, *review denied*, 109 Wn.2d 1001 (1987). A trial court abuses its discretion when its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. *State v. Bible*, 77 Wn. App. 470, 471, 892 P.2d 116, *review denied*, 127 Wn.2d 1011 (1995).

■ The Sixth Amendment to the United States Constitution and CONST. art. 1, § 22 guarantee criminal defendants the right to confront and cross-examine adverse witnesses. *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State v. Russell*, 125 Wn.2d 24, 73, 882 P.2d 747 (1984), *cert. denied*, 115 S. Ct. 2004 (1995). Although this right is of constitutional magnitude, it is subject to the following limits: (1) the evidence sought to be admitted must be relevant; and (2) the defendant's right to introduce relevant evidence must be balanced against the State's interest in precluding evidence so prejudicial as to disrupt the fairness of the fact-finding process. *See Washington v. Texas*, 388 U.S. 14, 16, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983); *State v. Gallegos*, 65 Wn. App. 230, 236-37, 828 P.2d 37, *review denied*, 119 Wn.2d 1024 (1992).

Before the State may preclude the admission of a defendant's relevant evidence, it must demonstrate a compelling state interest. *Hudlow*, 99 Wn.2d at 15-16. Quoting the Michigan Court of Appeals, the Washington Supreme Court has stated:

> *"[I]t is clear that any attempt to limit meaningful cross-examination, whether it be by legislative act, judicial pronouncement or court ruling upon the admissibility of evidence, court rule, or the common law, must be justified by a compelling state interest.* Where a statute or court ruling is challenged on grounds that it unduly restricts the Sixth Amendment right to confrontation, the state's interest in the rule must be balanced against the fundamental requirements of the constitution." We believe the "compelling state inter-

est" requirement is the proper method of balancing the defendant's right to produce relevant evidence versus the state's interest in limiting the prejudicial effects of that evidence. We now adopt that standard as our own.

*Hudlow*, 99 Wn.2d at 15-16 (emphasis in original, citations omitted).

Under *Hudlow*, we must first determine whether evidence of Graham's prior false testimony and evidence of her 1988 possession conviction and subsequent probation are relevant. Relevant evidence is that which tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401; *Gallegos*, 65 Wn. App. at 237. Here, a fact of consequence to the determination of the action was the identity of the person or persons who assaulted Graham. With respect to her prior false testimony, Graham's credibility as to who kicked her and as to her ability to perceive who it was that kicked her was relevant to the issue of who assaulted her. With respect to Graham's prior conviction and probation, we agree with the State and the trial court that the fact of her conviction was not relevant to her credibility. But the fact that Graham was on probation, a condition of which was that she refrain from using drugs, admittedly provided her with a motive to lie under oath at her deposition as to the extent and recency of her drug use.

Although the State argues that the trial court properly excluded evidence of Graham's prior false testimony and probation because it concerned the collateral issue of her prior drug use, we are not swayed by the argument. Here, Graham admittedly lied under oath for her own purposes in the related civil proceeding, and the question for the jury was whether she would lie under oath for her own purposes in the criminal proceeding. The subject matter of the prior false testimony is less important than the fact of that false testimony and the motivation for that false testimony. The fact of the lie and the motivation for the lie are highly relevant. Absent a compelling State interest

in excluding the evidence that outweighs the fundamental constitutional right of confrontation, the defense was entitled to explore the possibility that, given Graham's admitted willingness to lie under oath when it suited her purposes before, she may have been doing it again in the criminal prosecution, for whatever reasons might serve her purposes there.

Because we conclude that the evidence of Graham's prior false statement and probation is relevant, we must next determine whether the State's interest in excluding the evidence is compelling in nature. *See Hudlow*, 99 Wn.2d at 16. Here, the State's interest in excluding the evidence is to ensure a just trial and prevent an acquittal based on prejudice against the victims' history of drug use and abuse. Although this is a compelling interest, we need spend little time balancing the conflicting interests in this particular case because the trial court admitted Musick's testimony of frequent drug use with both victims in the weeks preceding the assaults. That ruling has not been challenged. Under these circumstances, the State's interest in preventing further disclosure of drug usage was not sufficiently compelling to justify the exclusion of the evidence of Graham's prior false testimony and the evidence of her motivation to lie based on the conditions of her probation. Accordingly, we conclude that the trial court violated McDaniel's rights under the confrontation clause by excluding the evidence.

■ ■ A violation of a defendant's rights under the confrontation clause is constitutional error. *Dickenson*, 48 Wn. App. at 470 (citing *Harrington v. California*, 395 U.S. 250, 251-52, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969)). Constitutional error is presumed to be prejudicial, and the State bears the burden of proving that the error was harmless. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). In determining whether constitutional error is harmless, Washington courts use the "overwhelming untainted evidence test," under which appellate courts look only to the untainted

evidence to decide if it is so overwhelming that it necessarily leads to a finding of guilt. *Guloy*, 104 Wn.2d at 426; *Dickenson*, 48 Wn. App. at 470.

Here, the untainted evidence consists of the physical evidence documenting Graham's injuries, and expert testimony interpreting that evidence. Although this evidence corroborated Graham's testimony to some extent, the experts could not corroborate the identity of her attacker. Without Graham's testimony identifying McDaniel as her attacker, the remaining evidence is not so overwhelming that it necessarily leads to a finding of guilt. Accordingly, we reverse McDaniel's conviction of second degree assault and remand for a new trial on that count.[5]

The remainder of this opinion has no precedential value and will not be published; instead it will be filed for public record in accordance with the rules governing unpublished opinions.

BECKER and ELLINGTON, JJ., concur.

Reconsideration denied October 4, 1996.

Review denied at 131 Wn.2d 1011 (1997).

---

[5]McDaniel argues in the alternative that evidence of Graham's prior false testimony was also admissible under ER 608(b) and 609(a). Because we reverse on constitutional grounds, we need not reach this issue, but nevertheless observe that even if the evidence at issue here was not admissible under the rules of evidence, on the facts presented McDaniel's constitutional right to confrontation must take precedence. *See* 5A K. TEGLAND, WASHINGTON PRACTICE, *Evidence* § 230 (3d ed. 1989) (a criminal defendant's constitutional right to confront witnesses may take precedence over rules such as ER 608 and 609. Thus, the defendant may have a right to cross-examine a prosecution witness about prior convictions or other misconduct even though the cross examination might otherwise be restricted or prohibited by the Evidence Rules).