[No. 34354-1-II. Division Two. July 3, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. RALPH PEREZ, *Appellant*.

---

524

*Sheri L. Arnold*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Todd A. Campbell* and *Karen A. Watson, Deputies*, for respondent.

¶1 PENOYAR, J. — Ralph Perez appeals his convictions for first degree burglary, third degree malicious mischief, and fourth degree assault after he confronted a neighbor in his apartment complex. He argues that (1) the trial court violated his right to a fair trial by allowing a possibly intoxicated person, Shaun Ingram, to testify; (2) the trial court violated his right to confront and fully examine a witness (a) by not allowing Perez to question Ingram regarding his use of drugs or alcohol and (b) by excluding Perez's statements to the police that he acted in self-defense; and (3) there was insufficient evidence to support his burglary conviction because he was never inside Ingram's apartment. In a statement of additional grounds, Perez challenges his offender score calculation. We hold that the court improperly limited defense counsel's cross-examination of Ingram as to whether he was under the influence of drugs or alcohol at the time of his testimony. We reverse and remand for a new trial.

## FACTS

### I. THE INCIDENT

¶2 Officer William Brand and Deputy Sheriff Inga Carey received a report of a possible assault at an apartment in

Tacoma. When they arrived at the scene, Officer Brand spoke with the alleged victim, Shaun Ingram, in Ingram's apartment. Ingram informed them that he had just been assaulted by his neighbor, Perez. While they spoke with Ingram, Perez stood outside the apartment, yelling and screaming. Officer Brand said to Ingram, "Let me guess, that must be the person you're talking about." 2 Report of Proceedings (RP) at 47-48. Ingram indicated that it was and told the officers, "That's him, that's the guy that hit me." 2 RP at 52. Perez was yelling that Ingram was "high" and that the officers needed to give Ingram a "drug test," and he was "cussing, F-word this, F-word that." 2 RP at 33.

¶3 Perez was very belligerent with the officers. The officers approached Perez, and he ran to his apartment, refused to come out, and talked to the officers through a screened window in his apartment. Perez told the officers that Ingram had spread "some rumors" about Perez around the apartment complex and that Perez went to Ingram's apartment to confront him about the rumors. 2 RP at 34. Officer Brand testified that "[Perez] said that he—ended up going in the apartment and giving Mr. Ingram the one-two-three," moving his hands in a boxing motion. 2 RP at 35. Officer Brand asked Perez to come out of his apartment, but Perez refused.

¶4 The officers returned to talk to Ingram. Officer Brand observed damage to the wall behind Ingram's front door, saw that Ingram's shirt was torn and stretched, and observed some redness on Ingram's chest. The damage on the wall looked as though it had recently happened and there was debris on the floor under the wall damage.

¶5 The officers approached Perez once more, and Perez again ran into his apartment. They tried to speak with him through the window, but Perez refused to speak. Perez repeatedly refused to allow the officers into his apartment and refused to exit his apartment to speak with officers.

¶6 The officers requested that a supervising sergeant respond to the scene. The sergeant arrived, informed Perez that he was under arrest, and authorized the officers to

break down Perez's apartment door and enter the apartment. They kicked down the door and arrested Perez.

¶7 The State charged Perez with first degree burglary, third degree malicious mischief, and fourth degree assault. Pretrial, Perez moved to suppress all statements made after arrest, arguing that he was arrested without a warrant and that his arrest was unlawful because no exceptions to the warrant requirement applied. The trial court agreed and suppressed all statements Perez made after the officers forced entry into his apartment and arrested him. Perez's case proceeded to trial.

II. THE TRIAL AND INGRAM'S TESTIMONY

¶8 During trial, Ingram testified for the State. He explained that he lived in an eight unit apartment complex where Perez was also a resident. Ingram did small jobs for Perez around his apartment, and they became good friends. Ingram explained that on the date of the alleged assault, Perez knocked on Ingram's door. When Ingram opened the door, at first he did not see Perez because he was hiding around a corner next to his apartment. Perez then "came at [Ingram]" and forced his way into Ingram's apartment. 3 RP at 84. Perez started pushing Ingram back into his apartment, and Ingram attempted to stop him by closing the apartment door. The force shoved the door into the wall, causing a hole in the wall and pushing Ingram inside the apartment. Ingram explained that, after Perez shoved him inside, Perez was yelling and hitting him. Perez hit him a few times before Ingram was able to get Perez out the door. Ingram stated that he did not strike Perez back. Ingram pushed on the door because Perez tried to stop it from closing with his foot. Ingram also explained that Perez ripped his shirt during the incident.

¶9 After Ingram's direct examination, the court excused both the jury and Ingram from the courtroom and stated, "I have some concerns whether the witness is under the influence of something." 3 RP at 92. Counsel responded:

Your Honor, I don't believe he's under the influence of anything. I talked with the defendant and I talked with his mother, and

I have some background in the area. I'm a licensed psychologist in Washington State. The defendant according to the mother is mildly retarded. I don't believe he's under the influence of anything, but I haven't asked him.

3 RP at 92.[1] The court noted that it still had concerns about whether Ingram was under the influence because of Ingram's manner of walk, glazed eyes, and inability to hold up his arms. The court decided it would

> bring [Ingram] back, and before there's cross-examination, ask him if he is under the influence. If he says, "No," we'll continue. If he says that he is, "Yes," and he's been drinking or using drugs or he's on some prescription medicine, I think that we should know about that.

3 RP at 93. After Ingram returned to the courtroom, the following colloquy occurred between the court and Ingram:

> [The court]: [The prosecutor] asked you some questions, and it appears to me that you have been confused at times and that you're a little disoriented, and I have some questions for you concerning that. It could simply be that you're nervous, but I have concerns whether you're under the influence of some alcohol or some drugs. Are you on any prescription drugs?
>
> [Ingram]: Nope.
>
> [The court]: Are you taking any other drugs?
>
> [Ingram]: No, Your Honor.
>
> [The court]: Have you consumed any alcohol recently?
>
> [Ingram]: No, Your Honor.
>
> [The court]: Are you feeling okay?
>
> [Ingram]: I'm sick, that's about it.
>
> [The court]: And what is your physical condition at this time?
>
> [Ingram]: My lungs are filled up from smoking cigarettes.
>
> [The court]: So you're not in very good health; is that what you're telling me?
>
> [Ingram]: That's basically what it is.
>
> [The court]: But your current condition that you're exhibiting here is a condition that you experience every day then?

---

[1] Although the Prosecutor used the word "defendant," it appears from the record that he was speaking of Mr. Ingram, a witness at Perez's trial. 3 RP at 92.

[Ingram]: No.

[The court]: Are you under the care of a physician at this time; that means, are you under the care of a doctor?

[Ingram]: Yes, I am. I go see a doctor every day, basically.

[The court]: Is he prescribing some medication for you?

[Ingram]: He just says I have to sit up in a sit-up position to where I don't lay flat when I'm sleeping, to where—

[The court]: Now, you said that you go to a doctor every day?

[Ingram]: To get it checked to see what it is.

[The court]: This is every day of the week?

[Ingram]: It's not every day.

[The court]: What is it?

[Ingram]: For two days.

[The court]: You've done it for two days?

[Ingram]: I go see him so they can do a test to see if it's whatever, strep throat or whatever.

[The court]: Where are you being treated?

[Ingram]: Summerview Clinic out on Canyon Road.

[The court]: Where you there yesterday?

[Ingram]: I was there like the other day before that, way before that. But I've been here back and forth talking to Jerry, but the last Friday, that's all.

3 RP at 94-96. The court then stated that it would allow Ingram's testimony to continue. Defense counsel requested a ruling by the court regarding Ingram's testimony. The court again asked Ingram to leave the courtroom. Perez's counsel asked the court for permission to inquire whether Ingram was under the influence of drugs or alcohol. The court allowed Perez's counsel to inquire only about Ingram's condition at the time of the incident but not whether Ingram was under the influence of drugs or alcohol during the trial. The court brought Ingram into the courtroom, and Perez's counsel proceeded:

[Counsel]: Are you feeling okay today?

[Ingram]: I'm just sick. I'm trying to recover from it.

[Counsel]: Physically you're okay; you can support your hand okay, raising your right hand.

[Ingram]: I can do that. I'm just—it's when I talk, then I loose [sic] my voice and then I have to drink water to—I'm just—

[Counsel]: But you didn't have any physical limitation in raising your hand?

[Ingram]: I can do all of that. I can move my hands.

3 RP at 98-99. Perez's counsel then continued with his cross-examination regarding the incident.

¶10 A jury found Perez guilty of first degree burglary, third degree malicious mischief, and fourth degree assault. Perez appeals.

## ANALYSIS

I. CONSTITUTIONAL RIGHT TO CONFRONT AND FULLY EXAMINE A WITNESS

¶11 Perez argues that his Sixth Amendment right to confront and fully cross-examine an adverse witness was violated when the trial court did not allow him to question Ingram regarding his mental or physical state during trial.

¶12 The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to confront and cross-examine adverse witnesses. *State v. McDaniel*, 83 Wn. App. 179, 185, 920 P.2d 1218 (1996). Although this right is of constitutional magnitude, it is subject to the following limits: (1) the evidence sought to be admitted must be relevant and (2) the defendant's right to introduce relevant evidence must be balanced against the State's interest in precluding evidence so prejudicial as to disrupt the fairness of the fact-finding process. *McDaniel*, 83 Wn. App. at 185.

¶13 The trial court has discretion to determine the scope of cross-examination. *McDaniel*, 83 Wn. App. at 184-85. We will not reverse a trial court's rulings on the scope of cross-examination absent a manifest abuse of

530

discretion—when its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. *McDaniel*, 83 Wn. App. at 185. Extent of cross-examination is largely discretionary with the trial court. *State v. De Gaston*, 5 Wn.2d 73, 78, 104 P.2d 756 (1940).

¶14 It was a manifest abuse of discretion to limit Perez's cross-examination to Ingram's physical state at the time of the alleged incident and not to allow Perez to question Ingram regarding his physical state at the time of trial. While the trial court had already entered into a colloquy with Ingram regarding his physical state, defense counsel was entitled to broad latitude to cross-examine Ingram on his credibility issues. *See State v. Peterson*, 2 Wn. App. 464, 465-66, 469 P.2d 980 (1970) (it is fundamental that a defendant in a criminal trial be given great latitude in cross-examining witnesses on credibility (citing *State v. Tate*, 2 Wn. App. 241, 469 P.2d 999 (1970))). This is especially true where Ingram had given confused and inarticulate testimony, and where the trial court observed that Ingram appeared confused and disoriented.

II. ISSUES LIKELY TO ARISE AGAIN ON A RETRIAL

¶15 At the CrR 3.5/3.6 hearing, Officer Brand testified that Perez told him, "After Mr. Ingram swung at me, I gave him the old one, two, three." RP (Dec. 19, 2005) at 13. Apparently, Perez wanted to admit this testimony during trial, but his counsel did not explicitly state this to the trial court and does not argue this on appeal. The trial court did not rule on this question. Officer Brand did not testify to Perez's statement that he was acting in self defense during trial, and Perez cites to no place in the record where the trial court excluded the statement as self-serving hearsay. Officer Brand did not repeat this testimony during trial.[2] On appeal, Perez argues that his statement to Officer Brand

---

[2] If either party seeks to admit Perez's statements to Officer Brand on retrial, the court should look to *State v. Roberts*, 142 Wn.2d 471, 492, 14 P.3d 713 (2000) and *State v. Nation*, 110 Wn. App. 651, 661, 41 P.3d 1204 (2002) for recent changes in hearsay statement admissibility.

should have been admitted under the "rule of completeness." Br. of Appellant at 23-24.

*The Rule of Completeness Does Not Apply to Oral Testimony*

■ ¶16 On appeal, Perez asserts that the rule of completeness requires that Perez's statement be admitted. ER 106 provides that:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it.

¶17 The State is correct that ER 106 is limited to a writing or recorded statement and does not apply to Perez. The rule of completeness did not require that Perez's statement to Officer Brand be admitted to the jury. Instead, ER 801 provides the proper framework.

III. INSUFFICIENT EVIDENCE

¶18 Perez asserts that there was no evidence that he was ever inside Ingram's apartment and that there was insufficient evidence that he committed burglary. Perez asserts that Ingram blocked him from entering his apartment and that there was insufficient evidence that he intended to enter Ingram's apartment to commit a crime.

■ ■ ¶19 Sufficient evidence to support a conviction exists if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220, 616 P.2d 628 (1980). All reasonable inferences from the evidence must be drawn in the State's favor and interpreted most strongly against the defendant. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d

1068 (1992). We defer to the trier of fact on issues of witnesses' credibility and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 875, 83 P.3d 970 (2004) (citing *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)).

■ ■ ¶20 Perez is incorrect. There was sufficient evidence in the record that he entered Ingram's apartment. Ingram testified that Perez forced his way into his apartment and that Ingram successfully pushed Perez out of his entryway with the door. Credibility determinations are for the trier of fact and are not subject to review. *Thomas*, 150 Wn.2d at 875. Ingram's testimony provides sufficient evidence that Perez was inside Ingram's apartment and that he intended to enter. There is therefore sufficient evidence to support Perez's first degree burglary conviction.

¶21 We do not address any other issues raised as they appear moot.

¶22 We reverse and remand for a new trial.

ARMSTRONG and HUNT, JJ., concur.