IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31274-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES JOEL LANDIS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — James Joel Landis appeals his conviction for the attempted first degree murder of Sergeant Tracy Harrison, second degree assault of his wife, Mary Landis, and harassment–threat to kill Ms. Landis and/or Pat Stevens, a sheriff's office dispatcher. He contends (1) his counsel was ineffective for not pursuing a diminished capacity defense, and the trial court erred in (2) denying his request for a voluntary intoxication instruction, and (3) limiting certain cross-examination. We reject his contentions and affirm.

FACTS

Because evidence sufficiency is uncontested and the appeal issues are mainly legal, we summarize the facts. The State's evidence is strong, including multiple incriminating statements from Ms. Landis about Mr. Landis' assault and harassment, the

recording and transcript of the dispatcher's call to Mr. Landis, Mr. Landis' admissions, and many witnesses and exhibits detailing the shooting. Mr. Landis initially claimed diminished capacity. After changing lawyers, he asserted a PTSD-based "suicide by cop" defense at trial, claiming lack of intent to murder, assault, or harass.

On August 7, 2010, the Landises were working in their garden. Mr. Landis became angry when he damaged the irrigation system while operating a tractor. Ms. Landis attempted to calm him by taking the tractor key and standing in front of the tractor. Mr. Landis used another key to start the tractor and ran over Ms. Landis, breaking her leg. Ms. Landis drove to a neighbor's house, then went to a hospital by ambulance. There, deputies took her statement. Ms. Landis told Sergeant Harrison she did not want police going to her house because she was afraid someone might get shot as a result of Mr. Landis' PTSD, his medications, and his alcohol consumption. Earlier in the day, Mr. Landis had taken one or two time-release morphine capsules and depression medication, and had been drinking.

The sergeant and Deputy Kevin Newport drove separately to the Landis property to investigate. Deputy Newport took cover in a concealed position, while Sergeant Harrison drove up to talk to Mr. Landis. The dispatcher called Mr. Landis to persuade him to come out, but he refused. Instead, Mr. Landis fired multiple shots at the sergeant causing him to retreat in his bullet riddled car and take cover. After the initial shooting, Mr. Landis told the dispatcher who had heard the shots, "I just shot your stupid deputy." Report of Proceedings (RP) at 767. Mr. Landis threatened the dispatcher, then pursued

2

Sergeant Harrison. Mr. Landis shot into the unoccupied patrol car and approached Sergeant Harrison, who shot Mr. Landis to end the confrontation. Before he shot Mr. Landis, the sergeant could hear Mr. Landis yelling, "Come take me out." RP at 466.

Ms. Landis became an adverse State's witness. During Detective Kevin Files' testimony, a portion of Ms. Landis' statement, stating her husband was "a crazy guy," was used to impeach her. RP at 780-81. Defense counsel attempted to elicit more of Ms. Landis' prior statement from Detective Files, asking if Ms. Landis had mentioned that Mr. Landis had PTSD. After an affirmative response, the court sustained an objection to the line of questioning. On direct testimony, Ms. Landis' testimony was peppered with unsolicited references to Mr. Landis' PTSD without objection.

Mr. Landis testified he was an injured Vietnam war veteran "rated 70 percent PTSD by the Veterans Administration, with Agent Orange." RP at 888. Mr. Landis related he was deeply depressed and suicidal the day of the incident. He fired with the "intention to aggravate police officers into completing my intention of taking my life." RP at 905. Mr. Landis testified he was an excellent shot and could have shot Sergeant Harrison, if he had desired; Mr. Landis later argued this showed a lack of intent to murder with the evidence showing, at best, an uncharged assault. He argued the alleged assault on Ms. Landis was an accident. Finally, Mr. Landis argued any harassment was not serious or intended and should be judged in light of his PTSD.

The jury found Mr. Landis guilty as charged. He appealed.

3

ANALYSIS

A. Ineffective Assistance Claim

The issue is whether Mr. Landis was denied effective assistance of counsel when his counsel did not pursue a diminished capacity or voluntary intoxication defense. He contends sufficient evidence established diminished capacity and voluntary intoxication.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish this defense, a defendant must show:

> (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995); *Strickland*, 466 U.S. at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 693.

We strongly presume counsel's representation was effective. *McFarland*, 127 Wn.2d at 335. Deficient performance is not shown by matters relating to trial strategy or tactics, and courts are hesitant to find ineffective assistance of counsel where those tactics are unsuccessful. *See State v. Sardinia*, 42 Wn. App. 533, 542, 713 P.2d 122 (1986) (giving defense counsel wide latitude in making tactical decisions). However, the record must include some support for the trial tactics used. *See State v. Hendrickson*, 129 Wn.2d 61, 78-79, 917 P.2d 61 (1996).

4

The *Strickland* tests may be satisfied by the failure of defense counsel to present a diminished capacity defense where the facts support the defense. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 819 (1987). Failure to request a diminished capacity instruction does not constitute ineffective assistance of counsel per se. *State v. Cienfuegos*, 144 Wn.2d 222, 229-30, 25 P.3d 1011 (2001) (where defense counsel was able to argue his case theory). To show diminished capacity, a defendant must show the crime charged includes a particular mental state as an element, present evidence of a mental disorder, and supply "expert testimony demonstrating the defendant suffered from a mental condition that impaired his . . . ability to form the requisite . . . intent." *State v. Eakins*, 127 Wn.2d 490, 502, 902 P.2d 1236 (1995); *State v. Atsbeha*, 142 Wn.2d 904, 921, 16 P.3d 626 (2001). PTSD can affect a defendant's intent resulting in diminished capacity. *State v. Bottrell*, 103 Wn. App. 706, 715, 14 P.3d 164 (2000).

Here, the choice of defense was strategic and Mr. Landis' defense counsel chose fitting tactics; this is not deficient performance. Mr. Landis initially explored diminished capacity, but the pretrial record shows he was having difficulty securing supporting expert testimony and the defense was thus not well-founded. Mr. Landis' PTSD suicide by cop defense was well grounded by the evidence and was directed at undermining the intent element in the attempted first degree murder charge. Defense counsel argued Mr. Landis might be responsible for an uncharged assault on Sergeant Harrison but not attempted murder. Defense counsel was able to argue his case theory without clouding the intent issue with diminished capacity.

5

Regarding voluntary intoxication, in *State v. Byrd*, 30 Wn. App. 794, 638 P.2d 601 (1981), the defendant argued defense counsel should have argued voluntary intoxication negated the necessary intent to act as an accomplice. *Id.* at 798. The court found evidence of considerable drinking but failed to find evidence the defendant was not in control of himself, as the defendant ably recalled the events in detail. *Id.* Here, Mr. Landis' anger was apparent, but he was still able to specifically explain his intentions and clearly recall the day's events. Mr. Landis testified his marksmanship skills remained unaffected and could have shot Sergeant Harrison if he had desired, indicating his ability to control himself during these events.

In sum, we conclude Mr. Landis fails to show defective assistance of counsel. Given this conclusion, we do not discuss Mr. Landis' failure to show prejudice.

### B. Voluntary Intoxication

The issue is whether the trial court erred in not providing the jury with a voluntary intoxication instruction.

"Decisions rejecting jury instructions are reviewed for an abuse of discretion." *State v. Priest*, 100 Wn. App. 451, 454, 997 P.2d 452 (2000). While the State must prove a defendant acted with the necessary intent, intoxication is not an element the State has to negate. *State v. Coates*, 107 Wn.2d 882, 890, 735 P.2d 64 (1987). Defendants are entitled to voluntary intoxication instructions "*only* if: (1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) the defendant presents evidence that the drinking affected his . . .

6

ability to acquire the required mental state." *State v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37 (1992) (emphasis added). Evidence of drinking alone is insufficient; what is required is "substantial evidence of the effects of the alcohol on the defendant's mind or body." *State v. Gabryschak*, 83 Wn. App. 249, 253, 921 P.2d 549 (1996).

In *Gabryschak*, the court denied the defendant's request for a voluntary intoxication instruction. *Id.* at 252. No evidence showed intoxication affected the defendant's ability to form the requisite mental state. *Id.* at 253-54. The court found the evidence showed the defendant understood the police's requests, was aware he was under arrest, and knew he was going to jail. *Id.* at 254-55. No testimony indicated the defendant was disoriented or unable to feel pain. *Id.* at 255, *see also Byrd*, 30 Wn. App. at 798 (no intoxication where defendant gave a detailed recital of the events at trial).

Mr. Landis argues substantial evidence of consumption and the effects of intoxicants warranted an intoxication instruction. But he did not testify he was intoxicated or unaware of his actions. Instead, Mr. Landis gave detailed recollections about the trial events, including his shooting intent and how he felt he could accurately aim and shoot as a marksman. Mr. Landis needed to establish his clear mind to support his lack of intent defense. Considering the conflict with his chosen defense, Mr. Landis cannot show prejudice. Notwithstanding the trial court's reasoning about Mr. Landis' lack of diligence in raising the defense, the record does not support a voluntary intoxication instruction. Given this analysis, we conclude Mr. Landis' counsel was not ineffective by failing to pursue a voluntary intoxication defense.

7

## C. Limitation on Cross-Examination

The issue is whether the trial court erred in not allowing Mr. Landis to cross-examine the State's witness about Ms. Landis' "crazy guy" statement. Citing ER 106 (Rule of Completeness) and arguing the trial court's decision was unfair and misleading to the jury, Mr. Landis contends the trial court abused its discretion when it denied Mr. Landis the opportunity to cross-examine on the remainder of Ms. Landis' statement to explain the crazy behavior was due to PTSD.

We do not reverse rulings regarding the scope of cross-examination absent a manifest abuse of discretion, meaning a decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. McDaniel*, 83 Wn. App. 179, 185, 920 P.2d 1218 (1996). We review evidence admissibility decisions for an abuse of discretion. *State v. Simms*, 151 Wn. App. 677, 692, 214 P.3d 919 (2009). The rule of completeness provides when a party introduces a statement, an adverse party may require the party to introduce any other part "which ought in fairness to be considered contemporaneously with it." ER 106. But "the trial judge need only admit the remaining portions of the statement which are needed to clarify or explain the portion already received." *State v. Larry*, 108 Wn. App. 894, 910, 34 P.3d 241 (2001).

The State attempted impeachment by contradicting Ms. Landis' trial testimony by having Detective Files read her statement describing her husband as a "crazy guy." Consistent with the PTSD defense, Mr. Landis' counsel cross-examined Detective Files, attempting to show Mr. Landis' normal behavior as character evidence. In light of

8

earlier unchallenged rulings favoring the defense regarding limiting character evidence and considering the already well-developed record about Mr. Landis' PTSD, the trial court did not abuse its discretion in limiting cumulative inquiry. Mr. Landis does not show how admitting the remaining portions of Ms. Landis' statement would clarify or explain evidence already received. The State limited its inquiries to the narrow temporal scope of when Mr. Landis was on the tractor. Defense counsel was permitted to ask whether Ms. Landis told Detective Files her husband suffered from PTSD. Mr. Landis was able to and did argue his case theory based on the existing PTSD evidence.

Moreover, any error was harmless. Evidentiary errors "require[] reversal only if the error, within reasonable probability, materially affected the outcome of the trial." *State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993).

Given this record, we cannot conclude the outcome was materially affected by limiting cross-examination or that the trial court abused its discretion in its ruling.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Siddoway, C.J.

Fearing, J.

9