

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 1 5 2017
*Fairhurst. CJ*
CHIEF JUSTICE

This opinion was filed for record
at 8:00am on July 15, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | NO. 92475-9 |
| | ) | |
| v. | ) | |
| | ) | EN BANC |
| DONALD ORMAND LEE, | ) | |
| | ) | |
| Petitioner. | ) | Filed    JUN 1 5 2017 |
| | ) | |

FAIRHURST, C.J.—Donald Ormand Lee was convicted on two counts of third degree rape of a child. RCW 9A.44.079. Before trial, Lee moved to cross-examine the victim, J.W., about a prior false rape accusation she had made against another person. The trial court permitted Lee to ask J.W. if she had made a false accusation to police about another person, but it prevented Lee from specifying that the prior accusation was a *rape* accusation. Lee claims this violated his confrontation clause rights. U.S. CONST. amend. VI. Lee also contends the four year delay between his initial arrest and the trial constitutes a manifest constitutional error warranting review for the first time on appeal. Lastly, Lee challenges the trial court's imposition of legal financial obligations (LFOs).

Because the State's legitimate interests in excluding prejudicial evidence and protecting sexual assault victims outweighs Lee's need to present evidence with minimal probative value, the trial court did not abuse its discretion when it prevented Lee from specifying that J.W. had falsely accused another person of rape. When the court permitted Lee to cross-examine J.W. about her prior false accusation, it provided Lee with an adequate opportunity for confrontation. Limiting the scope of that cross-examination was within the court's discretion. Further, because Lee was not actually restrained and because charges had not been filed, the four year delay between his initial arrest and the trial is not a manifest constitutional error warranting review for the first time on appeal.

We therefore affirm the Court of Appeals in part. However, we remand the case for consideration of Lee's ability to pay LFOs.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 9, 2009, Lee was arrested on suspicion of third degree rape of a child. The victim, J.W., told police she engaged in various sex acts with Lee, whom she knew only as "'Rick,'" during the summer of 2008. Clerk's Papers (CP) at 1. On October 14, 2009, the court released Lee because no charges were filed.

For the next two and a half years, Lee's case "fell through the cracks." 1B Report of Proceedings (RP) (Part B, Dec. 19, 2013) at 201. The Kelso Police Department initially investigated the allegations, but transferred the case to the

2

Cowlitz County Sheriff's Office after determining it was outside the city's jurisdiction. The sheriff's office received the report from the Kelso Police Department in March 2009. A detective did some "sporadic" work on the case but retired in April 2010. *Id.* Lee's case then went unnoticed until May 2012, when Detective Brad Thurman discovered it while reviewing unassigned cases.

In March 2013, Lee was arrested again on suspicion of third degree rape of a child based on the same allegations from 2009. On March 6, 2013, the State charged Lee with five counts of third degree rape of a child. RCW 9A.44.079. Each count alleged Lee engaged in sexual intercourse with J.W., age 15, between June and October 2008. Each count also alleged as an aggravating factor that the offense "was part of an ongoing pattern of sexual abuse of the same victim . . . manifested by multiple incidents over a prolonged period of time." CP at 6-8; RCW 9.94A.535(3)(g). Lee pleaded not guilty. The trial commenced on December 18, 2013.

Before trial, Lee moved to introduce evidence that J.W. previously fabricated a rape allegation against another individual. A police report showed that on June 11, 2008, J.W. and her mother called the Kelso Police Department, alleging that J.W. had been raped by a classmate. The next day, J.W. and her mother called again to

3

explain that J.W. "had made up the story regarding the rape" and that the sex "was consensual." CP at 17.

The trial court speculated that J.W.'s prior false statement is admissible under ER 608[1] to demonstrate J.W.'s character for untruthfulness but also potentially prohibited by the rape shield statute as past sexual behavior: "So, you know, part of me says, under ER 608 it comes in, but under the rape shield statute, part of me says it should not come in. So I'm a little bit unsure." 1A RP (Dec. 18, 2013) at 29. To strike a "fair balance between those two competing interests," the court permitted Lee to ask J.W. if she had made a prior false accusation about another person to police. *Id.* at 33. However, the court prohibited Lee from specifying that it was a rape accusation or mentioning any past sexual behavior:

> [A]s far as the issue of [J.W.] . . . making a -- a false accusation about being -- to the police, I'm going to allow that, that she made a false accusation about another person to the police. The cross examination or the redirect, however it comes out[,] would be limited in that she could talk about her motivations, maybe she was scared, uncertain and

---

[1] "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." ER 608(b).

4

she promptly rectified it the very next day and there will be no mention of any . . . sexual conduct in -- in any way.

*Id.*

J.W. was the State's main witness at trial. J.W. testified that in June 2008, she received an unusual phone call from a man identifying himself as "'Rick.'" *Id.* at 57. J.W. later identified the defendant as "Rick," explaining she never knew him as Lee. *Id.* at 61. Lee asked to meet J.W. in person and gave her his telephone number. J.W. agreed to meet Lee at Tam O'Shanter Park in Kelso, Washington.

After their first meeting at Tam O'Shanter Park, J.W. testified she and Lee began having regular sexual interactions. Typically, Lee would pick up J.W. after summer school and drive somewhere to engage in oral and vaginal sex. J.W. testified she would also perform oral sex on Lee while he drove. Lee always drove the same black Camaro or Thunderbird. They would usually go to either Tam O'Shanter Park or Riverside Park. On one occasion, they went to a residence in Castle Rock that Lee claimed was his ex-girlfriend's house. J.W. remembered petting two cats at the Castle Rock house. J.W. also remembered visiting the residence that Lee shared with his mother.

J.W. met Lee almost every day after summer school from June through September 2008. They did not have sex every day, but J.W. estimated they had sex "more than ten [but] less than thirty" times during that summer. *Id.* at 82. J.W.

provided specific details for some of these interactions. For example, J.W. testified Lee has a tattoo on his chest or shoulder and another tattoo on his arm.

J.W. testified that she was 15 years old at the time. Lee, then 42 years old, told J.W. he was "concerned" that he "would get in trouble" due to the age difference. *Id.* at 64. Lee often told J.W. not to tell anyone about their relationship so he would not "'get in trouble.'" *Id.* at 83. J.W. testified that Lee never wanted to go out to eat in public or go out with other couples. Lee bought cigarettes for J.W., telling her "'If I buy you these, you need to . . . promise'" not to "tell anyone about our relationship." *Id.* at 80.

J.W. testified she would frequently write notes to Lee. J.W. asked Lee to write her letters in return, but he gave her only one letter. J.W. kept the letter "for a while" because "[i]t had meant something" to her. *Id.* at 86. J.W. eventually gave the letter to an investigating officer, and the State introduced it at trial. Before trial, Lee stipulated that he wrote the letter. The letter does not address J.W. by name and is addressed to "My friend/love." Ex. 1. In the letter, Lee describes specific sex acts he enjoys with the recipient. *See, e.g., id.* ("I always love making love to you."). Lee also expresses a desire to try other sex acts in the future, such as anal sex. *Id.*

Generally, the letter details Lee's feelings for the recipient and his desire for a relationship with her.[2]

J.W. testified her relationship with Lee ended in September 2008. J.W. told her mother about the relationship in early 2009. J.W.'s mother reported the relationship to police. J.W. told police about the relationship and provided the letter she received from Lee. J.W. later identified "Rick" in a photo lineup. 1A RP (Dec. 18, 2013) at 91; Ex. 2. J.W. also showed police the various locations she would meet Lee and have sex with him.

---

[2] My friend/love

> I want to say this first. I'm glad that you walked into my life. You have a very special place in my heart. You turn me on in a way like no other woman ever has! I always hunger to be inside you. Every time I think about you or hear your voice I always have to touch myself. You will always be my friend and I will always be there when you need me. If you ever need to be held all you have to do is ask. I will also always be there to [wipe] your tears away. I'm also wanting you to know is, I'm starting to have some strong feelings for you! I do not like it when we're apart from each other. You are so beautiful in my eyes your body turns me on. . . . I really want to have something with you. You are always and forever in my thoughts. . . . Thank you for wanting to be my friend. I will never let you down. I'm going to show you what it is like to have a man that cares for you more than you know. . . .

> Your friend 4 life
> R

Ex. 1.

7

During cross-examination, defense counsel asked J.W. if she had "ever made any false accusations about another person to the police." 1A RP (Dec. 18, 2013) at 120. J.W. responded, "Yes." *Id.* at 121. She testified that it occurred in early June 2008 and that she "immediately corrected it." *Id.* On redirect examination, J.W. explained, "I didn't want someone to think that I had made a false report. I wanted to make it right." *Id.* at 151.

Defense counsel also asked J.W. about the Castle Rock house. J.W. testified that the Castle Rock house belonged to Lee's ex-girlfriend. J.W. said she could not remember what the inside of the house looked like. J.W. could not remember any animals depicted in the décor, but she remembered two cats lived in the house. She could not remember what color the cats were, but she remembered they were "slightly large." *Id.* at 112. J.W. also could not recall details of the interior of Lee's mother's house, despite testifying that she had been there. She also could not remember what Lee's mother looked like.

Lee's ex-girlfriend Beth Bongiovanne also testified. In 2008, Bongiovanne lived in the Castle Rock house and had two cats. Bongiovanne testified that she allowed Lee to enter her house and use her black 1985 Camaro. Bongiovanne testified Lee used her Camaro "[q]uite a bit" in 2008, but not daily. *Id.* at 167, 181.

Lee also testified. Lee testified he did not know J.W. Lee said the only interaction he had with J.W. occurred in 2008 when J.W. approached him outside of

his mother's house and asked if he was married to Tina Dunlap. Lee denied calling

J.W., picking her up outside her high school, and driving her to Tam O'Shanter Park

and Riverside Park. Lee admitted he wrote the letter but claimed he wrote it to "[n]o

one." 1B RP (Dec. 19, 2013) at 269. He said he wrote the letter for "[n]o particular

reason" and that it was a "fantasy." *Id.* Lee testified he placed the letter with other

possessions stored at his ex-wife's house. Lee denied driving Bongiovanne's black

Camaro in 2008. Lee testified he never had any tattoos, and he removed his shirt to

demonstrate he had none.

The jury convicted Lee on two counts of third degree rape of a child, but it

did not find the aggravating factor—that the crimes were part of an ongoing pattern

of sexual abuse of the same victim. The jury found Lee not guilty of the remaining

three counts. The court sentenced Lee to 34 months of confinement and 26 months

of community custody for count one, and 26 months of confinement and 34 months

of community custody for count two. The court imposed $2,641.69 in LFOs,

including $2,041.69 in discretionary costs. Lee did not object.

The Court of Appeals affirmed Lee's conviction. *State v. Lee*, No. 33229-2-

III, slip op.at 1-2 (Wash. Ct. App. Aug. 13, 2015) (unpublished),

http://www.courts.wa.gov/opinions/pdf/332292.unp.pdf. The Court of Appeals

concluded that the rape shield statute does not preclude evidence of a prior false rape

accusation and held that the trial court abused its discretion when it limited Lee's

9

cross-examination of J.W.[3] But the court concluded this error did not violate the confrontation clause. Finding no constitutional error, the court applied nonconstitutional harmless error analysis and concluded the error did not materially affect the outcome of the trial. The court also held the nearly four year delay between Lee's first arrest and the beginning of trial did not violate his constitutional right to a speedy trial. U.S. CONST. amend. VI. Lee raised the issue for the first time on appeal, and the court concluded the error was not "manifest" for purposes of RAP 2.5(a)(3). *Lee*, No. 33229-2-III, slip op. at 6. The court also declined to review the trial court's imposition of LFOs because Lee failed to object during sentencing. *See State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015).

Lee petitioned this court for review on three issues. First, he argues the Court of Appeals erred when it applied nonconstitutional harmless error analysis because the trial court's ruling violated the confrontation clause. Second, Lee claims the delay between his initial arrest and the trial violated his right to a speedy trial. Finally, he asks for remand so the trial court can consider his ability to pay LFOs.

---

[3] *See Lee*, No. 33229-2-III, slip op. at 10-11 ("Arguably, the court did not have tenable grounds to deny Mr. Lee's request to cross-examine J.W. pertaining to her credibility. Thus, the trial court abused its discretion. . . . Although the trial court arguably erred in not allowing evidence that the prior false allegation was rape, any error was harmless. . . . Given all, we conclude the court's exclusion of evidence was harmless, does not violate the confrontation clause and, therefore, does not warrant reversal.").

We granted Lee's petition for review. *State v. Lee*, 185 Wn.2d 1009, 368 P.3d 171 (2016).

## II. ISSUES

A.   Did the trial court violate Lee's confrontation clause rights when it prevented him from asking J.W. about her prior false rape accusation? Which harmless error standard, if any, should have been applied?

B.   Is the nearly four year delay between Lee's initial arrest and the trial a manifest constitutional error warranting review for the first time on appeal under RAP 2.5(a)(3)?

C.   Should we remand for consideration of Lee's ability to pay LFOs consistent with *Blazina*?

## III. ANALYSIS

A.   The trial court did not violate the confrontation clause when it prevented Lee from specifying that J.W. had falsely accused another person of rape

As an initial matter, we need not consider whether the trial court had tenable evidentiary grounds to prevent Lee from asking J.W. about the prior false rape accusation. The Court of Appeals held that the trial court erred when it concluded that the rape shield statute prevented Lee from specifying the nature of J.W.'s prior false accusation. Lee did not seek review of this issue, and the State failed to raise it in its response to Lee's petition for review. Thus, the issue is not before us, and we express no opinion on the Court of Appeals conclusion that the trial court committed evidentiary error.

11

Because the Court of Appeals found only evidentiary error—rather than constitutional error—it applied nonconstitutional harmless error analysis and upheld Lee's conviction. Lee contends that the Court of Appeals should have applied constitutional harmless error analysis because the trial court's ruling infringed his right to confront J.W. But determining the appropriate harmless error standard requires considering whether the trial court violated Lee's right to confrontation. Therefore, the only question before us is whether the confrontation clause required permitting Lee to specify that J.W.'s prior false allegation involved rape.[4]

1.    Standard of review

We review a limitation of the scope of cross-examination for an abuse of discretion. *State v. Garcia*, 179 Wn.2d 828, 844, 318 P.3d 266 (2014); *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). A trial court abuses its discretion when its decision is "'manifestly unreasonable or based upon untenable grounds or reasons.'" *Garcia*, 179 Wn.2d at 844 (internal quotation marks omitted) (quoting *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012)).

---

[4] We note that some federal and state courts have upheld the complete exclusion of prior false rape accusation evidence. *See, e.g., Hughes v. Raines*, 641 F.2d 790, 792 (9th Cir. 1981); *State v. Raines*, 118 S.W.3d 205, 213 (Mo. Ct. App. 2003). Other states disagree. *See, e.g., Morgan v. State*, 54 P.3d 332 (Alaska Ct. App. 2002). But we need not address whether the confrontation clause requires admission of prior false rape accusation evidence given the unique circumstances here. The trial court permitted Lee to cross-examine J.W. regarding her prior false accusation but prevented Lee from specifying that it was a rape accusation.

12

2.     The trial court did not abuse its discretion when it prevented Lee from specifying the nature of J.W.'s prior false accusation

The trial court permitted Lee to ask J.W. whether she had made a false accusation to police about another person. However, the court prevented Lee from specifying that J.W.'s prior false accusation was a *rape* accusation. He argues this limitation violated his confrontation clause rights and that the error was not harmless beyond a reasonable doubt. But because the excluded information had minimal probative value in light of legitimate state interests, the trial court's ruling did not violate the confrontation clause.

Both the federal and state constitutions protect a defendant's right to confront an adverse witness. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).[5] "Confrontation" includes more than mere physical confrontation. *Davis*, 415 U.S. at 315. "'The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*.'" *Id.* at 315-16 (internal quotation marks omitted) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965)). Cross-examination allows the defendant to "test the perception, memory, and credibility of

---

[5] Lee does not contend that the Washington Constitution provides broader confrontation protection than the United States Constitution. Our analysis therefore focuses on the latter.

witnesses." *Darden*, 145 Wn.2d at 620. Confrontation therefore assures the accuracy of the fact-finding process. *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "Whenever the right to confront is denied, the ultimate integrity of this fact-finding process is called into question. As such, the right to confront must be zealously guarded." *Darden*, 145 Wn.2d at 620 (citation omitted).

But the right to confront a witness through cross-examination is not absolute. *Chambers*, 410 U.S. at 295. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Courts may deny cross-examination if the evidence sought is "vague, argumentative, or speculative." *Darden*, 145 Wn.2d at 621.

We apply a three-part test to determine whether a trial court violated a defendant's right to confront a witness by limiting the scope of cross-examination:

14

> First, the evidence must be of at least minimal relevance. Second, if relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial. Finally, the State's interest to exclude prejudicial evidence must be balanced against the defendant's need for the information sought, and only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld.

*Id.* at 622; *see also State v. Jones*, 168 Wn.2d 713, 720-21, 230 P.3d 576 (2010). No state interest is sufficient to preclude highly probative evidence. *Darden*, 145 Wn.2d at 622. Analyzing these factors, we conclude the trial court did not violate Lee's confrontation clause rights when it limited the scope of J.W.'s cross-examination.

### a. The excluded evidence had minimal probative value

First, though relevant, J.W.'s prior false rape accusation had minimal probative value because it did not directly relate to an issue in the case. Rather than demonstrate a specific bias or motive to lie, which would be highly probative, the evidence invited the jury to infer that J.W. is lying because she had lied in the past.

Generally, evidence is relevant to attack a witness' credibility or to show bias or prejudice. *Davis*, 415 U.S. at 316. Credibility evidence is particularly relevant when the witness is central to the prosecution's case. *See Darden*, 145 Wn.2d at 619 ("the more essential the witness is to the prosecution's case, the more latitude the defense should be given to explore fundamental elements such as motive, bias, credibility, or foundational matters"). Relevant credibility evidence may include specific instances of lying, though "their admission is highly discretionary under ER

15

608(b)." *State v. Kunze*, 97 Wn. App. 832, 859, 988 P.2d 977 (1999); *see also State v. O'Connor*, 155 Wn.2d 335, 349, 119 P.3d 806 (2005) ("In exercising its discretion [to admit or exclude evidence under ER 608(b)], the trial court may consider whether the instance of misconduct is relevant to the witness's veracity on the stand and whether it is germane or relevant to the issues presented at trial.").

But evidence of a witness' prior false statement is not always relevant, particularly when that evidence is unrelated to the issues in the case. The confrontation clause primarily protects "cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness *as they may relate directly to issues or personalities in the case at hand.*" *Davis*, 415 U.S. at 316 (emphasis added); *see also Van Arsdall*, 475 U.S. at 680 ("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show *a prototypical form of bias on the part of the witness.*" (emphasis added)). Evidence intended to paint the witness as a liar is less probative than evidence demonstrating a witness' bias or motive to lie in a specific case. *See, e.g., Olden v. Kentucky*, 488 U.S. 227, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988) (finding error in a trial court's refusal to allow cross-examination on a rape victim's extramarital relationship when that relationship would have shown the victim's bias or motivation).

16

Here, Lee did not offer the prior false accusation evidence to demonstrate that J.W. was biased or that she had a motive to lodge a false accusation against him. Instead, he invited the jury to infer that because J.W. made a false rape accusation in the past, her accusation here must also be false. Indeed, defense counsel made this argument during closing remarks. 1C RP (Dec. 20, 2013) at 388 ("You're dealing with a girl, [J.W.], who admitted she had made a false accusation about somebody to the police in June of 2008. That same girl claims that in June, July, August, September, that time frame in 2008, Donald Ormand Lee had sex with her over and over and over."). Lee's defense theory is clear: J.W. lied then, so she must be lying now. A prior false statement admitted for this purpose has questionable probative value because it does not directly relate to issues in the case. We typically disfavor evidence intended to suggest that because a person acted wrongfully in the past, she must also be doing so now. ER 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

Washington courts have twice upheld the exclusion of false rape accusation evidence. *See State v. Demos*, 94 Wn.2d 733, 619 P.2d 968 (1980); *State v. Harris*, 97 Wn. App. 865, 989 P.2d 553 (1999). In *Demos*, the defendant was convicted by a jury of first degree burglary and attempted first degree rape. 94 Wn.2d at 734. On appeal, the defendant argued the trial court abused its discretion when it excluded

17

evidence showing the complaining witness made two allegedly false rape accusations in the past. *Id.* at 735. We held the prior accusations were irrelevant because the defendant could not prove they were actually false. *Id.* at 737 (The offered evidence "proved nothing about the truth or falsity of the victim's version of the alleged rape."). We further noted that even if relevant, the evidence would be "highly prejudicial." *Id.*

In *Harris*, the Court of Appeals affirmed the exclusion of an allegedly false rape accusation for similar reasons. 97 Wn. App. at 872-73. Citing *Demos*, the *Harris* court stated that "[g]enerally, evidence that a rape victim has accused others is not relevant and, therefore, not admissible, unless the defendant can demonstrate that the accusation was false." *Id.* at 872 (citing *Demos*, 94 Wn.2d at 736-37). Like *Demos*, the *Harris* court noted the defendant could not prove the prior accusation was false. *Id.*

Lee correctly notes that here, unlike in *Demos* and *Harris*, J.W. admitted to falsely accusing another person of rape in the past. But the *Harris* court suggested prior rape accusations offered as general attacks on witness credibility have limited probative value. The court explained that prior rape accusations are usually not relevant "because the propensity of the complaining witness to cry 'rape' is usually offered to impugn credibility." *Id.* The court noted the evidence was only "potentially probative" given the unique circumstances of the case. *Id.* During

18

Thomas Harris' trial for third degree rape, the victim testified that Harris asked her several times, "'Are you going to tell your father that I raped you or what?'" *Id.* at 867. The court reasoned that, because of this evidence, a prior false rape accusation might be relevant:

> The State put into evidence Mr. Harris's parting comment to M.T. Mr. Harris did not deny making this remark, which, on its face, tended to prove his guilt. Therefore, the prior accusation evidence was potentially probative. A prior accusation, later recanted, would provide an innocent explanation for the remark and bolster Mr. Harris's version of the events, assuming the jury believed it and Mr. Harris could show that he knew about it at the time.

*Id.* at 872. In other words, even if Harris could prove the falsity of the witness' prior rape accusation, that evidence would be relevant only to provide an "innocent explanation" for other evidence in the case. *Id. Harris* does not support the proposition that a prior rape accusation, if proved false, is required to be admitted into evidence by the confrontation clause. Rather, the *Harris* court's reasoning shows that a prior false rape accusation "offered to impugn credibility," *id.*, is minimally probative because it fails to demonstrate "ulterior motives of the witness *as they may relate directly to issues or personalities in the case at hand,*" *Davis*, 415 U.S. at 316 (emphasis added).

Lee also relies on *State v. McDaniel*, 83 Wn. App. 179, 186-87, 920 P.2d 1218 (1996), where the Court of Appeals held that the trial court violated the defendant's right to confrontation when it excluded evidence that a witness had lied during a

19

deposition. But, unlike J.W.'s prior false accusation, the prior false statement in *McDaniel* was directly relevant to the witness' ability to perceive the events at issue.

In *McDaniel*, the defendant argued that the complaining witness' testimony was unreliable because she was under the influence of drugs. *Id.* at 184. To support this argument, the defendant moved to introduce impeachment evidence during cross-examination showing that the witness was on probation for a drug offense and that she "had lied about the recency of her drug use during her deposition in a related civil suit." *Id.* at 182. The trial court excluded this evidence, and the Court of Appeals reversed, explaining the witness' willingness to lie was relevant to her credibility:

> Although the State argues that the trial court properly excluded evidence of [the witness'] prior false testimony and probation because it concerned a collateral issue of her prior drug use, we are not swayed by the argument. Here, [the witness] admittedly lied under oath for her own purposes in the related civil proceeding, and the question for the jury was whether she would lie under oath for her own purposes in the criminal proceeding. . . . Absent a compelling State interest in excluding the evidence that outweighs the fundamental constitutional right of confrontation, the defense was entitled to explore the possibility that, given [the witness'] admitted willingness to lie under oath when it suited her purposes before, she may have been doing it again in the criminal prosecution, for whatever reasons might serve her purposes there.

*Id.* at 186-87.

But, like *Harris*, the prior false statement in *McDaniel* was relevant to other evidence in the case. The defense argued that the complaining witness' drug usage

20

affected her ability to accurately perceive the events giving rise to the alleged assault. *Id.* at 183-84. The court explained that her prior false testimony was relevant because it related to her drug use and therefore the reliability of her testimony: "With respect to her prior false testimony, [the witness'] credibility as to who kicked her and as to her ability to perceive who it was that kicked her was relevant to the issue of who assaulted her." *Id.* at 186. In other words, the defendant in *McDaniel* did not introduce the witness' prior false statement for the sole purpose of suggesting she is a liar, as Lee intended to do here. Rather, the prior false statement in *McDaniel* showed that the witness had a motivation to lie about "the extent and recency of her drug use," which cast doubt on her ability to perceive the events she testified to. *Id.*

J.W.'s prior false rape allegation bears no analogous relationship to the issues in this case. It did not demonstrate she had a motive to lie, nor did it explain other evidence in the case or cast doubt on her ability to perceive events. Though we cannot say Lee's proffered evidence is entirely irrelevant, it has only minimal probative value.

b. The evidence was prejudicial

Still, even minimally relevant evidence satisfies the first prong under *Darden*. 145 Wn.2d at 622.[6] We therefore must consider whether the State has shown that

---

[6] The concurrence mistakenly reads our conclusion to mean that the excluded evidence fails the first prong under *Darden*, alleging that we have "rewrit[ten]" the test. Concurrence at

21

the "evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." *Id.* Given the evidence's low probative value here, the State can meet its burden.

Like evidence of prior bad acts, evidence of a false rape accusation asks the jury to make the improper inference that because a complaining witness lied before, she must also be lying now. Our Evidence Rules are designed to prevent juries from making this inference specifically because of its potentially prejudicial effect. *See* ER 404(b). "Rule 404(b) is based upon the belief that such evidence is too prejudicial—that despite its probative value, the evidence is likely to be overvalued by the jury, and the jury is too likely to jump to a conclusion of guilt without considering other evidence presented at trial." 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 404.10 (6th ed. 2016); *see also State v. Bowen*, 48 Wn. App. 187, 195-96, 738 P.2d 316 (1987) (discussing the inherently prejudicial nature of prior bad acts evidence).

---

5. This is not so. We agree with the concurrence that the excluded evidence here is minimally relevant and satisfies the first prong. We therefore continue to the second and third prongs and conclude that the State has shown that the excluded evidence is prejudicial and that it has a compelling interest in exclusion that outweighs Lee's need to specify the nature of J.W.'s prior false accusation. Contrary to the concurrence's assertion, this reasoning is consistent with *Hudlow*. *See Hudlow*, 99 Wn.2d at 16 (Because the State has a compelling interest in protecting rape victims, minimally relevant evidence may be excluded when it is prejudicial.).

Further, the prejudice from J.W.'s false rape allegation is similar to the prejudice caused by prior sexual acts. In *Hudlow*, we explained the State's interest in avoiding prejudice caused by this evidence:

> [T]he state's interest in applying the rape shield statute is to bar evidence that may distract and inflame jurors if it is of arguable probative worth. To the degree exclusion of prior sexual history evidence aids in achieving just trials and preventing acquittals based on prejudice against the victims' past sex lives, it tends to further the truth-determining function of criminal trials.

99 Wn.2d at 16. Although the application of the rape shield statute is not an issue before us in this case, the prejudice concerns we articulated in *Hudlow* are analogous here.[7] For example, a prior false rape accusation may "distract and inflame jurors" with evidence "of arguable probative worth." *Id.* This is particularly true when the prior false accusation bears no direct relationship to the issues in the case. The potential prejudice from J.W.'s prior false rape accusation outweighs its minimal probative value.

---

[7] The concurrence criticizes this analogy to evidence of prior sexual acts discussed in *Hudlow*. Concurrence at 8-9. To avoid confusion, we wish to emphasize that our analysis here has no bearing on whether the rape shield statute applies to prior false rape accusations. Our reliance on *Hudlow* is intended to show that evidence of prior false rape accusations and evidence of prior sexual acts can have a similar prejudicial effect. As we recognized in *Hudlow*, that prejudicial effect can justify excluding evidence of minimal probative value without violating the confrontation clause. 99 Wn.2d at 16; *see also Darden*, 145 Wn.2d at 621 ("[R]elevant evidence may be deemed inadmissible if the State can show a compelling interest to exclude prejudicial or inflammatory evidence."). That prior false accusation evidence has a similar prejudicial effect to prior sexual activity evidence does not necessarily bring it within the scope of the rape shield statute, which expressly applies only to "sexual behavior." RCW 9A.44.020(2).

c. The State's interests outweigh Lee's need for the information sought

Finally, "the State's interest to exclude prejudicial evidence must be balanced against the defendant's need for the information sought, and only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld." *Darden*, 145 Wn.2d at 622. The State's compelling interest in encouraging rape victims to report and cooperate in prosecuting these crimes outweighs Lee's need to specify that J.W.'s prior false accusation was a rape accusation.

In *Hudlow*, we recognized the State's legitimate interest in excluding prejudicial evidence of prior sexual acts because admitting such evidence would discourage rape victims from "step[ping] forward and prosecut[ing] these crimes where conviction rates historically have been very low." 99 Wn.2d at 16. The State has similar interests at stake here. A person who recants even an admittedly fabricated rape accusation is no less susceptible to future victimization than anyone else. When a prior false accusation bears no direct relationship to a witness' motive to lie in the present case, its admission detracts attention from the defendant's alleged actions and places an undue focus on the victim's history. This may discourage victims from reporting their assaults and participating in the prosecution of their offenders. Further, prosecutors may avoid pursuing these otherwise successful cases simply because the victim made a false accusation in the past.

24

These compelling state interests outweigh Lee's need for the information sought, particularly in light of the trial court's accommodation here. Lee was not prohibited from inquiring about J.W.'s false accusation. The trial court permitted Lee to ask J.W. if she had made a prior false accusation about another person to police. But the court prevented Lee from specifying that the prior false accusation was a *rape* accusation. Lee argues he needed to inquire about the specific nature of the prior accusation in order to adequately confront J.W. But the trial court's accommodation allowed Lee to attack J.W.'s credibility while also accounting for the State's legitimate interest in avoiding prejudice and protecting sexual assault victims.

Because Lee was still able to attack J.W.'s credibility, the State's interests in limiting prejudice and protecting sexual assault victims outweighed Lee's need to specify that the prior false accusation was a rape accusation. *See State v. Fisher*, 165 Wn.2d 727, 753, 202 P.3d 937 (2009) (under the confrontation clause, "a defendant has a right to put specific reasons motivating the witness' bias before the jury, *not specific facts*" (emphasis added)). The trial court admitted the evidence to the extent that it was relevant for impeachment purposes—to cast doubt on J.W.'s credibility. Once the trial court permitted Lee to cross-examine J.W. about her prior false accusation, it sufficiently accommodated Lee's right to adequate confrontation. Limiting the scope of that cross-examination was within the court's discretion. *See*

25

*Van Arsdall*, 475 U.S. at 679 ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.").

We recognize that this is a close case. A defendant has a right to confront his accuser and impeach her credibility. Accordingly, evidence of a witness' dishonesty, including false accusations, may be appropriate and even required in some circumstances. But the State has a compelling interest in protecting rape victims, encouraging their cooperation in the investigation and prosecution of offenders, and excluding prejudicial evidence with minimal probative value. This does not mean that all false rape accusations can or should be excluded, however. For example, a prior false accusation bearing a strong resemblance to the circumstances giving rise to the allegations at issue might be highly probative.[8]

But under the circumstances here and given the evidence's minimal probative value and the State's interest in excluding it, and the trial court's accommodation, the trial court did not abuse its discretion when it prevented Lee from specifying the nature of J.W.'s prior false accusation and therefore did not violate Lee's right to confrontation. Because we find no violation, we need not decide whether the Court of Appeals erred when it declined to apply the constitutional harmless error standard.

---

[8] The concurrence agrees that J.W.'s prior false accusation would be more probative if it were "directly analogous" to the allegations against Lee. Concurrence at 7 n.5.

B.    The alleged speedy trial violation is not a manifest constitutional error warranting review for the first time on appeal under RAP 2.5(a)(3)

Lee claims the nearly four year delay between his initial arrest and the filing of formal charges violated his Sixth Amendment right to a speedy trial. *See Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Lee failed to raise this claim before the trial court. He nevertheless contends we may review the error because it constitutes a "manifest error affecting a constitutional right." RAP 2.5(a)(3).

Generally, we may "refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). However, a party may raise a claim of error for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). To meet this standard, the petitioner must show that the error is "truly of constitutional dimension" and that it is "manifest." *O'Hara*, 167 Wn.2d at 98. "Manifest" under RAP 2.5(a)(3) requires a showing of actual prejudice. *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007).

To determine whether an error raised for the first time on appeal is of constitutional dimension, we consider "whether, if correct, it implicates a constitutional interest as compared to another form of trial error." *O'Hara*, 167 Wn.2d at 98. Here, the delay between Lee's initial arrest and when the State filed

27

charges against him does not implicate his speedy trial rights because he was neither charged nor actually restrained. *See United States v. Loud Hawk*, 474 U.S. 302, 311, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986).

Both the federal and state constitutions provide defendants with a right to a speedy and public trial. U.S. CONST. amend VI; WASH. CONST. art. I, § 22. The right to speedy trial attaches when a charge is filed or an arrest made, whichever occurs first. *Loud Hawk*, 474 U.S. at 310-11. But when no charges have been filed, only the "actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of the speedy trial provision." *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).

For example, in *United States v. MacDonald*, 456 U.S. 1, 102 S. Ct. 1497, 71 L. Ed. 2d 696 (1982), the defendant was charged with murder in military court. The charges were dismissed, and the defendant was released. *Id.* Over four years later, the government charged the defendant with the same crime in federal district court. *Id.* On appeal, the defendant argued the four year delay between his initial detention and trial violated his speedy trial rights. The court rejected this argument, explaining that the speedy trial right does not apply absent actual restraint or pending charges:

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

28

*Id.* at 8.

Similarly, in *State v. Poirier*, 34 Wn. App. 839, 664 P.2d 7 (1983), the court held that a delay between arrest and the filing of the information did not violate the defendant's speedy trial right. The defendant was arrested on September 13, 1980, and released after posting a bail bond. *Id.* at 840. Two days later, the State filed a "'No Charges Filed'" document. *Id.* Six months later, the State filed an information charging the defendant with unlawful possession of cocaine. *Id.* Citing *MacDonald*, the court held the delay did not violate the defendant's speedy trial right.

The same is true here. Lee was arrested on October 9, 2009. On October 13, the State filed a "Notice of No Charges Filed." CP at 4. The court entered an order stating that Lee "shall be released from custody and exonerated from the condition of release." CP at 3. Because Lee was not actually restrained and there were no conditions on his release, and because no charges were filed, the delay did not trigger his speedy trial rights. *Poirier*, 34 Wn. App. at 840; *MacDonald*, 456 U.S. at 7-9.

To support his argument to the contrary, Lee cites *Doggett v. United States*, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992), and *State v. Corrado*, 94 Wn. App. 228, 972 P.2d 515 (1999), *overruled in part by State v. Iniguez*, 167 Wn.2d 273, 217 P.3d 768 (2009). These cases are inapposite. In *Doggett*, the government failed to arrest the defendant for eight and a half years after charges were filed. 505

29

U.S. at 649-50. Unlike this case, even though the defendant was not restrained, charges were actually pending during the allegedly unconstitutional delay. *Corrado* illustrates the opposite scenario. The defendant successfully moved to dismiss charges on double jeopardy grounds, but he remained in jail while the State appealed the dismissal. *Corrado*, 94 Wn. App. at 231. Therefore, neither *Doggett* nor *Corrado* is relevant here, where no charges were filed *and* Lee was unconditionally released from custody. [9]

Finally, Lee cannot show that the alleged speedy trial violation is "manifest" for purposes of RAP 2.5(a)(3). A "manifest" error must cause prejudice. In other words, Lee must "show how the alleged error actually affected [his] rights at trial." *Kirkman*, 159 Wn.2d at 926-27. Lee argues the delay caused prejudice in two ways. First, he contends he experienced anxiety after being arrested and released. Second, Lee claims his mother, who passed away before trial, would have testified on his behalf. The *Barker* Court recognized both of these concerns as potential sources of prejudice. 407 U.S. at 532 (The speedy trial right is intended to "minimize the anxiety and concern of the accused[] and . . . to limit the possibility that the defense will be impaired.").

---

[9] We agree with the concurring opinion from the Court of Appeals, which correctly notes that Lee's claim is more properly considered as an undue preaccusation delay under the due process clause. *See MacDonald*, 456 U.S. at 7 ("Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause."). Lee never raised this argument.

30

But neither of these concerns caused prejudice here. In *MacDonald*, the court explained that without incarceration or pending charges, anxiety from a criminal investigation does not prejudice the defendant:

> Once charges are dismissed, the speedy trial guarantee is no longer applicable. At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in a normal life. This is true whether or not charges have been filed and then dismissed. This was true in *Marion*, where the defendants had been subjected to a lengthy investigation which received considerable press attention. But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. . . . Following dismissal of charges, . . . stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation.

456 U.S. at 8-9 (footnotes omitted). Therefore, Lee's anxiety is insufficient prejudice.

Nor was Lee's mother's unavailability prejudicial. Lee argues his mother's testimony would have refuted J.W.'s claim that she visited her house by explaining the details of her house that J.W. could not accurately recall. But this testimony would be cumulative. Lee gave extensive testimony refuting J.W.'s claims and describing the details of his mother's house. Lee's brother, who also lived at their mother's house, provided similar testimony. Lee's mother was therefore not central to his defense, and her absence did not cause prejudice.

The alleged error did not affect his rights at trial. It therefore is not a manifest constitutional error under RAP 2.5(a)(3), and we need not consider it.

C.      Consistent with *Blazina*, we remand the case to the trial court for consideration of Lee's ability to pay LFOs

Lee argues the trial court erred when it imposed LFOs without making an individualized determination of his ability to pay. At sentencing, the court imposed $2,641.69 in LFOs, including $2,041.69 in discretionary costs. The trial court did not consider Lee's ability to pay, and Lee did not object. Had Lee objected, the trial court would have been obligated to consider his present and future ability to pay before imposing the LFOs sought by the State. *See State v. Curry*, 118 Wn.2d 911, 915-16, 829 P.2d 166 (1992). Although appellate courts "may refuse to review any claim of error which was not raised in the trial court," they are not required to. RAP 2.5(a). In *Blazina*, 182 Wn.2d at 830, we exercised our discretion under RAP 2.5(a) to "reach the merits and hold that a trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes LFOs." Consistent with *Blazina* and the other cases decided since, we remand to the trial court for consideration of Lee's ability to pay LFOs. *See, e.g.*, *State v. Duncan*, 185 Wn.2d 430, 437-38, 374 P.3d 83 (2016).

32

## IV. CONCLUSION

Because the State's interest in limiting prejudice and protecting sexual assault victims outweighs Lee's need to present evidence of minimal probative value, the trial court did not abuse its discretion when it prevented Lee from specifying that J.W.'s prior false accusation was a rape accusation. The trial court's accommodation satisfied Lee's right to adequate confrontation. Because no constitutional violation occurred, we do not decide whether the Court of Appeals erred when it declined to apply constitutional harmless error analysis. The four year delay between Lee's initial arrest and his trial is not a manifest constitutional error warranting review for the first time on appeal. We remand to the trial court for consideration of Lee's ability to pay LFOs.

*State v. Lee*, No. 92475-9

Fairhurst, C.J.

WE CONCUR:

González, J.

Yu, J.

No. 92475-9

GORDON McCLOUD, J. (concurring)—Both the state and federal constitutions guarantee criminal defendants the right to cross-examine adverse witnesses, including by impeaching an adverse witness's credibility. *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002) (citing U.S. CONST. amend. VI; WASH. CONST. art. I, § 22); *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983); *State v. Parris*, 98 Wn.2d 140, 144, 654 P.2d 77 (1982); *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980)). This right is not absolute, however: it protects the defendant's right to present only *relevant* evidence that is not "so prejudicial as to disrupt the fairness of the factfinding process." *Hudlow*, 99 Wn.2d at 15. Thus, trial courts retain discretion to exclude even relevant evidence if it is likely to degrade the jury's fact-finding function. *Id.*; *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 98 L. Ed. 2d 674 (1986).

1

In this case, the State argued, and the trial court found, only one reason to bar evidence of the victim's (J.W.'s) prior false rape allegation: they believed that Washington's rape shield statute[1] precluded any evidence from which the jury could infer that J.W. had previously engaged in consensual sex with someone other than the defendant. 1A Verbatim Report of Proceedings (RP) (Part A, Dec. 18, 2013) at 33 ("the way it comes down is the legislature has determined this is important and that that statute should trump the evidence rule"). The trial court therefore permitted the defense to elicit J.W.'s testimony that she had previously made a false allegation to the police but excluded questioning about the nature of that allegation—the fact that she alleged rape. It did so because it believed the rape shield law barred testimony that would ultimately reveal her "sexual history"—here, her underage, nonforcible sex with a "'boy.'" *Id.* at 30, 32.

---

[1] Washington's rape shield statute, RCW 9A.44.020(2), provides that

> [e]vidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section, but when the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense.

The Court of Appeals held that the trial court misapplied the rape shield law: "Washington's rape shield statute does *not* preclude introduction of evidence to show that a victim has made prior false accusations of rape because it bears on the victim's credibility." *State v. Lee*, No. 33229-2-III, slip op. at 10 (Wash. Ct. App. Aug. 13, 2015) (unpublished) (emphasis added), http://www.courts.wa.gov/opinions/pdf/ 332292.unp.pdf. As the majority notes, and as the State conceded at oral argument in this court, the State did not assign error to this holding and the scope of the rape shield statute is therefore not before us in this appeal. Majority at 11; *State v. Lee*, No. 92475-9 (Sept. 22, 2016), at 24 min., 25 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. Thus, we assume that the rape shield law does not apply to the excluded testimony in this case.[2]

---

[2] I note that this assumption is consistent with our case law, which holds that the rape shield statute "was created [only] for the purpose of ending an antiquated common law rule that 'a woman's promiscuity somehow had an effect on her [credibility]'" and thus may not be interpreted to bar *all* evidence of past sexual conduct, regardless of probative value. *State v. Jones*, 168 Wn.2d 713, 723, 230 P.3d 576 (2010) (quoting *Hudlow*, 99 Wn.2d at 8-9). It is also consistent with precedent from other jurisdictions that have addressed the issue of prior false allegations. *E.g., State v. Baker*, 679 N.W.2d 7, 10 (Iowa 2004) ("prior false claims of sexual activity do not fall within the coverage of our rape-shield law"); *Commonwealth v. Bohannon*, 376 Mass. 90, 95, 378 N.E.2d 987 (1978) (prior false rape allegation not barred by state rape shield statute); *State v. Boggs*, 63 Ohio St. 3d 418, 423, 588 N.E.2d 813 (1992) ("prior false accusations of rape do not constitute 'sexual activity' of the victim" within the meaning of state's rape shield law); *Covington v. State*, 703 P.2d 436, 442 (Alaska App. 1985) (on remand, defendant must be permitted to argue

3

Because we proceed from that assumption, the only questions before us are whether the trial court's erroneous limitation on cross-examination violated the right of confrontation and, if so, whether this error was harmless. I conclude that the answer to both questions is yes. I therefore disagree with the majority's decision to approve what the trial court did in this case—barring evidence that J.W. made a prior false allegation of *rape* violated Donald Lee's right of confrontation and was thus an error of constitutional magnitude. However, because I conclude that this error was harmless beyond a reasonable doubt, I concur in the decision to affirm Lee's convictions.[3]

---

that alleged victim's prior accusations of sexual abuse by others, were false; approving reasoning from other courts that rape shield laws do not bar such evidence); *State v. LeClair*, 83 Or. App. 121, 126-27, 730 P.2d 609 (1986) ("[e]vidence of previous *false accusations* by an alleged victim is not evidence of *past sexual behavior* within the meaning of the Rape Shield Law" (citing Or. Evid. Code 412)); *see also Clinebell v. Commonwealth*, 235 Va. 319, 324, 368 S.E.2d 263 (1988) (collecting "sex offense cases" holding that "evidence of prior false accusations is admissible to impeach the complaining witness' credibility or as substantive evidence tending to prove that the instant offense did not occur").

[3] I also concur in the majority's analysis of the other two issues presented.

4

ANALYSIS

I.     The trial court made a constitutional error by excluding evidence that the
       alleged victim had previously made a false allegation of rape

When a trial court limits witness impeachment to protect the fact-finding

process—as the trial court purported to do by applying the rape shield statute in this

case—we apply the three-part *Hudlow* test to determine whether that limitation

violates the constitutional right of confrontation. *Darden*, 145 Wn.2d at 621-23.

This test asks (1) whether the excluded evidence was relevant, (2) whether that

evidence was so inflammatory that it would have compromised the fairness of the

trial itself, and (3) whether any such prejudice outweighed the defendant's interest

in admitting relevant evidence in support of his theory. *Id.* (citing *Hudlow*, 99 Wn.2d

at 15).

In this case, the excluded testimony was clearly relevant. The majority

acknowledges this relevance in a footnote but—apparently rewriting the first

*Hudlow* prong—disregards it because it concludes that the testimony had "minimal

probative value." Majority at 15. To support this analysis, the majority relies on

two cases addressing *irrelevant* evidence: *State v. Harris*, 97 Wn. App. 865, 989

P.2d 553 (1999), and *State v. Demos*, 94 Wn.2d 733, 619 P.2d 968 (1980). *Harris*

held that a prior rape accusation is irrelevant to credibility unless the defendant can

demonstrate that it was actually made *at all*. 97 Wn. App. at 872. *Demos* held that

5

a prior accusation is not relevant unless it is demonstrably *false*. 94 Wn.2d at 736. In this case, the existence and the falsity of the prior allegation were not in dispute, and, for obvious reasons, this makes all the difference—thus, the majority's reliance on *Harris* and *Demos* is unavailing.[4]

Because J.W.'s prior false allegation was relevant to Lee's defense, it could not be excluded unless the State demonstrated "a compelling interest to exclude prejudicial or inflammatory evidence." *Darden*, 145 Wn.2d at 621 (citing *Hudlow*, 99 Wn.2d at 16). Here, the State can't meet that burden because it has not articulated any interest *at all* in excluding the evidence. On the contrary, it has conceded that the exclusion was evidentiary error. Wash. Supreme Court oral argument, *supra*, at

---

[4] And, contrary to the majority's assertion, nothing in *Harris* indicates that prior false rape allegations must relate to some "unique circumstance[]" of a subsequent rape case in order to be relevant or sufficiently probative. Majority at 18. In *Harris*, the defendant was charged with forcible rape; he admitted to sexual intercourse with the accuser but argued that she consented. 97 Wn. App. at 872. However, he also admitted to asking the victim several times after the intercourse whether she planned to tell her father that the defendant raped her. *Id.* At trial, the defendant offered disputed testimony by a third party that the victim had once made a false rape allegation against another person. *Id.* The trial court acknowledged that the false allegation would provide an innocent explanation for the defendant's questions *if* the defendant knew about that false allegation when he asked them. *Id.* But it excluded the testimony because the defendant did *not* claim any such knowledge and instead sought to admit the testimony solely for impeachment purposes—a purpose for which extrinsic evidence was inadmissible in that case. *Id.* at 872-73 (where complaining witness denied ever making a prior rape allegation, third party's testimony that she made it was inadmissible "extrinsic evidence" on credibility under ER 608). This ruling on impeachment evidence was a straightforward application of ER 608; it had nothing to do with the "unique circumstances" of the case.

6

24 min., 25 sec. Since the State has articulated no interest in excluding evidence of J.W.'s prior false rape allegation, there is nothing to weigh against Lee's right to present relevant evidence in his defense—our inquiry must end here. The trial court erred by excluding evidence that J.W. had previously made a false accusation of rape.[5]

The majority avoids this holding only by adopting two deeply flawed conclusions.

First, the majority makes the troubling assertion that it is "improper" for a defendant to use an accuser's prior false rape allegation as impeachment evidence. Majority at 22 ("Like evidence of prior bad acts, evidence of a false rape accusation asks the jury to make the *improper* inference that because a complaining witness lied before, she must also be lying now." (emphasis added)). But there is nothing improper about impeaching a complaining witness with evidence that he or she has a history of making false accusations—that is why courts universally admit evidence of prior accusations that are demonstrably false. *See supra* note 2. (And it is

---

[5] I agree with the majority that J.W.'s prior false allegation would be *more* probative if it "demonstrate[d] a specific bias or motive to lie" in this case or if it were directly analogous to the current allegation (i.e., if J.W. had previously alleged statutory instead of forcible rape). Majority at 15-16. But this makes no difference if the State offers *no* justification for excluding the prior false allegation evidence. *See Hudlow*, 99 Wn.2d at 16 (even if evidence has minimal relevance, State must offer "compelling" interest in exclusion).

presumably why the trial court admitted evidence that J.W. made a prior false accusation in this case.) Contrary to the majority's reasoning, evidence is not "prejudicial" under *Hudlow* just because it is impeaching. *See Wilson v. Olivetti N. Am., Inc.*, 85 Wn. App. 804, 814, 934 P.2d 1231 (1997) ("[e]vidence is not inadmissible under ER 403 simply because it is detrimental or harmful to the interest of the party opposing its admission; it is prejudicial only if it has the capacity to skew the truth-finding process" (citing *Hudlow*, 99 Wn.2d at 12-13)).[6]

Second, even though the majority accepts the State's concession that the rape shield statute did not apply here, it also holds that the *nature* of J.W.'s prior false allegation was properly excluded because "the prejudice from [admitting] J.W.'s false rape allegation is similar to the prejudice caused by [admitting] prior sexual acts." Majority at 23. This attempt to rehabilitate the State's case is both confusing—(did the rape shield law apply or did it not?)—and totally unsupported

---

[6] The majority's reasoning on this point depends on a misreading of *Hudlow*. *Compare* majority at 23 ("a prior false rape accusation [is unduly prejudicial because it] may 'distract and inflame jurors'" (quoting *Hudlow*, 99 Wn.2d at 16)), *with Hudlow*, 99 Wn.2d at 16 ("that state's interest *in applying the rape shield statute* is to bar evidence [of minimally relevant prior sexual history] that may distract and inflame jurors" (emphasis added)).

by precedent, which overwhelmingly distinguishes between prior sexual *acts* (inadmissible to impeach) and prior false *allegations* (admissible to impeach).[7]

Indeed, the majority's theory is internally contradictory. The majority holds that juries should *not* be permitted to infer that "[just] because a complaining witness lied before, she must also be lying now." Majority at 22. Yet it also approves of the disputed ruling in this case, limiting cross-examination to the fact rather than the details of J.W.'s prior false allegation, because this "accommodation allowed Lee to attack J.W.'s credibility" by forcing her to admit to a previous lie. *Id.* at 25.

The majority's confrontation clause analysis departs from well-established precedent, violates constitutional protections, and sows confusion. I therefore cannot join that analysis. I would hold that the trial court erred by barring cross-examination on the nature of J.W.'s prior false allegation.

---

[7] *See Jones*, 168 Wn.2d at 723 (rape shield statute "was aimed at ending the misuse of prior sexual conduct evidence, so that a woman's general reputation for truthfulness could not be impeached because of prior sexual *behavior*" (emphasis added) (quoting *Hudlow*, 99 Wn.2d at 8-9)); *Boggs*, 63 Ohio St. 3d at 423 ("prior false accusations of rape do not constitute 'sexual activity' of the victim" within the meaning of state's rape shield law); *LeClair*, 83 Or. App. at 126-27 ("[e]vidence of previous *false accusations* by an alleged victim is not evidence of *past sexual behavior* within the meaning of the Rape Shield Law").

9

II.    The trial court's error was harmless beyond a reasonable doubt

As noted above, trial courts retain discretion, under the Sixth Amendment and article I, § 22, to limit cross-examination so as to mitigate problems like confusion and unfair prejudice. *Arsdall*, 475 U.S. at 679; *Jones*, 168 Wn.2d at 723-24. But the *Hudlow* test is the standard by which we determine whether a trial court's exercise of that discretion complies with that constitutional protection. *Jones*, 168 Wn.2d at 723-24 (evidence of "minimal relevance" may be excluded, consistent with the confrontation clause, only to further "'compelling'" state interest in excluding prejudicial or inflammatory evidence (quoting *Hudlow*, 99 Wn.2d at 16)); *Hudlow*, 99 Wn.2d at 14-16 (adopting "compelling state interest" standard for determining whether "minimally relevant" evidence may be excluded consistent with Sixth Amendment and article I, section 22). Thus, a violation of the *Hudlow* standard is a constitutional error. *Hudlow*, 99 Wn.2d at 14-16; *see also State v. McDaniel*, 83 Wn. App. 179, 186-88, 920 P.2d 1218 (1996) (finding trial court abused its discretion by limiting cross-examination but affirming conviction under constitutional harmless error review). I therefore apply constitutional harmless error review to determine whether this error requires reversal.

Under constitutional harmless error review, reversal is not required when it is clear that the error was harmless beyond a reasonable doubt. *State v. Barry*, 183

10

Wn.2d 297, 302-03, 352 P.3d 161 (2015) (quoting *Chapman v. California*, 386 U.S. 16, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). This is a high standard on which the State bears the burden, but it can be met where there is overwhelming evidence of the defendant's guilt that is untainted by the error. *Id.* at 303 (citing *State v. Nist*, 77 Wn.2d 227, 233-34, 461 P.2d 322 (1969) (citing *Harrington v. California*, 395 U.S. 250, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969)); *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013) (citing *Chapman*, 386 U.S. at 24)). The State has met that standard here.

The most incriminating piece of evidence admitted at Lee's trial was the letter, which he admitted writing, addressed to "My friend/love," referencing sexual intercourse with the recipient, and was signed with the letter "R" as in "Rick." Ex. 1; 1B RP (Part B, Dec. 19, 2013) at 305. J.W. had the letter in her possession and gave it to the police after they began investigating the alleged rape. 1A RP (Dec. 18, 2013) at 90. She testified that Lee gave it to her in his car one afternoon when he picked her up from high school. *Id.* at 85. Lee described the letter as a "fantasy" and denied either addressing it or giving it to J.W., but he had no explanation for how it came into J.W.'s possession or why it was signed with the initial of the pseudonym he used with her. 1B RP (Part B, Dec. 19, 2013) at 273-74.

11

Nor did Lee have any explanation for how J.W.—whom he claimed only to have spoken to once for about five minutes, on the street—knew details about the inside of his mother's and ex-girlfriend's homes. *Id.* at 261, 266-75. Appellate defense counsel makes much of the fact that J.W. could not recall certain unique features of these homes, and of the fact that J.W. testified Lee had tattoos when he did not have any at the time of trial and claimed never to have had any. Suppl. Br. of Pet'r at 16. But J.W. testified that she was inside each home only once and saw Lee shirtless only once. 1B RP (Part B, Dec. 19, 2013) at 66-75. And all of these things occurred about five years prior to trial. These minor imperfections in J.W.'s testimony do not meaningfully diminish the prosecution's theory or evidence. The untainted evidence overwhelmingly supported Lee's convictions. I therefore concur in the decision to affirm the convictions.

## CONCLUSION

The trial court erred by excluding evidence that the complaining witness had previously made a false allegation of rape. This error was of constitutional magnitude. However, because the trial court's error was harmless beyond a reasonable doubt in light of the overwhelming untainted evidence, I concur in the majority's decision to affirm the convictions.

12

_Gordon McCloud, J._

_Madsen, J._

_Wiggins, J._

_Stephens, J._